Minthon v. Lewis.

# MINTHON V. LEWIS.

1. **Replevin:** OF HORSES TAKEN ON EXECUTION : EVIDENCE : USE AND CHARACTER OF TEAM AFTER LEVY. In an action to replevy a team of horses which defendant had caused to be taken on execution against the one in whose possession it was, evidence that defendant used the horses after the levy and before the sale to haul large loads, and that, though slightly blemished, they appeared to be "solid, satisfactory horses," was properly admitted on the question of the value of the team, as well as on the value of its use, under plaintiff's claim for damages.

2. ————: ————: ————: CONDUCT OF EXECUTION DEFENDANT. In such case, the testimony of the sheriff who took the team on the execution, to the effect that when he made the levy and notified the execution defendant of the fact, the latter said nothing, was rightly rejected, since the execution defendant was not a party, and had not testified on that point.

3. ————: ————: ————: STATEMENTS OF EXECUTION DEFENDANT. In such case, the execution defendant, as a witness, in response to a proper question, denied having had any conversation with one K. after he had bought the team for plaintiff. On his being then asked, "Will you swear positively you did not," the court remarked: "This is immaterial, unless you make it an impeaching question." *Held* that this remark was to the effect that, with proper foundation, the conversations might be proved only to discredit the witness, and that it was not prejudicial, since there was nothing in the record to show that plaintiff was bound by the admissions of the witness, even if he was his agent to buy the team.

4. **Practice:** LIMITATION OF NUMBER OF WITNESSES : EFFECT OF COURT'S REMARKS. The court may, in the exercise of a reasonable discretion, limit the number of witnesses on any point in a case. (See opinion for citations.) In this case, after the number had been limited to six, defendant offered four others on the same point, but the offer was refused, and the court, in its ruling, made the following observation: "The purpose of this offer, I suppose, is to save the right the counsel thinks was infringed by the ruling of the court. It is only a small matter anyway. As I understand, the court has the right to limit the number of witnesses on that topic, and the court has exercised that right." *Held* that if this had been addressed to the jury. as it was not, and had reference to the proofs in the case, it would have been reversible error ; but regarding it as referring to the offer, and not to the testimony in the case, or the fact sought to be established, it was not prejudicial error ; and it is the duty of this court to so construe the remark, unless the contrary meaning is clear.

Minthon v. Lewis.

5. **Instructions:** DEGREE OF ELABORATION REQUIRED. When the charge of the court states the law with sufficient clearness to be a safe guide to the jury under the testimony, it is not reversible error to refuse instructions asked, which elaborate the rules stated to a greater extent. (See opinion for illustration.)

6. ————: OWNERSHIP OF REPLEVIED HORSES : DECLARATIONS OF AGENT. In an action to recover horses which had been taken on execution against B., whom plaintiff claimed to be his agent, and as such to have had possession of the horses, the court instructed : "If you find that plaintiff gave to B. the sum of two hundred dollars as claimed, to be by said B. used in the purchase of a team of horses for this plaintiff; and if you also find that said B. used said money in the purchase of this team in question, then it would be your duty to find a verdict for the plaintiff, even though you should also find that said B. claimed that he was purchasing said team for himself." *Held* that the instruction was not subject to the objection that it was argumentative, nor that it gave undue prominence to particular facts,—since such facts were prominent in the case, and other instructions gave due prominence to the other facts.

7. **Verdict :** EXCESSIVE : BASED ON EVIDENCE AND INSTRUCTIONS NOT EXCEPTED TO. The verdict in this case for the detention of a team of horses, being justified by a special finding of the jury which there was evidence to support, and by an instruction of the court to which appellant did not object, cannot be set aside in this court on the ground that it is excessive.

*Appeal from Mitchell District Court.*—HON. J. B. CLELAND, Judge.

FILED, OCTOBER 23, 1889.

REPLEVIN for a span of horses. The district court gave judgment for the plaintiff, and the defendant appeals.

*L. M. Ryce*, for appellant.

*F. F. Coffin*, for appellee.

GRANGER, J.—The plaintiff and one Belville are residents of Dakota. In January, 1886, Belville came from Dakota to Mitchell county, Iowa, and bought the team in question. On the eleventh of February thereafter the defendant caused the team to be taken on execution to satisfy a judgment in his favor against Belville.

The plaintiff's claim is that he furnished the money to Belville to buy the team, and that it was purchased for him, and to be taken to him in Dakota. The defendant's claim is that the team was Belville's, and that the claim of plaintiff is merely to aid Belville to escape his creditors. Thus the issue of the case is as to which party owned the team at the time of the levy.

I. One Hathaway was a witness for defendant on rebuttal, and gave testimony as to the team being worked while in defendant's possession, after the levy and before the sale on the execution. His testimony was to the effect that he saw it hauling wood as often as three days in the week, on ground partly bare,—large loads; that the team was slightly blemished, and appeared to be "solid, satisfactory horses." A refusal of the court to strike out this testimony is urged as error, and the prejudice claimed for it is that it likely affected the finding of the jury as to the value of the horses. We do not see why it was not proper for that purpose. Of course the mere fact that the team worked could not have that effect, and there was no effort to show the value of their work. The fact that it could work, and the character of work it could do, would tend to show something as to its value ; and particularly in this case, where defendant had offered testimony of the unsoundness of the horses. The testimony also bore directly on the value of the use of the team under plaintiff's claim for damage.

1. REPLEVIN: of horses taken on execution: evidence: use and character of team after levy.

II. The sheriff who executed the writ was put on the witness stand by defendant, to prove that when he made the levy, and notified Belville of the fact, Belville said nothing. The court refused the offer, and we think rightly. Belville was not a party, and he had not testified on the point, so that the testimony could contradict him ; and we do not see for what other purpose it could be admissible.

2. ——:——:——: conduct of execution defendant.

III. During the examination of Belville he was asked if he did not have conversations with certain

Minthon v. Lewis.

3. ——: ——: ——: parties, and, among others, one Katz, and
statements of the witness said: "Did not have any talk
execution
defendant. with Ben Katz after I bought the team.
Have no recollection of any talk with him at Dailey's
corner in Osage. Don't think I did. *Question.* Will
you swear positively you did not? *By the court.* This
is immaterial, unless you make it an impeaching ques-
tion." It is urged that' this observation of the court
was prejudicial error, and the argument imputes to the
observation a meaning "that the different statements
proven to have been made out of court by Belville could
only have the limited effect of his impeachment." It is
doubtful if the statement is fairly susceptible of so
broad a meaning,—that is, it is doubtful if the court
should have been understood as applying its remark to
more than the last question; and, with the state of the
record, the remark, to that effect, was correct; and it
may be further said that, as to the preceding testimony,
the record does not show that the conversations, if had
with Belville, could have been proven or considered as
against this plaintiff. The fact that he was agent to
purchase the team would not make his statements at all
times admissible against the plaintiff. We can see no
prejudice in the remark. The purport of the court's
remark was that, with a proper foundation, the conver-
sations might be proven or considered to discredit the
witness.

IV. The court limited the number of witnesses in
proof of statements made by Belville to six, and complaint
4. PRACTICE: is made of this action by the court. The
limitation of record furnishes no reasons for imputing to
number of
witnesses: ef- this action an abuse of discretion. That
fect of court's
remarks. the court may limit the number of wit-
nesses on any point in the case by a reasonable exercise
of such power, see *Kesee v. Railway Co.*, 30 Iowa, 78;
*Bays v. Herring*, 51 Iowa, 286; *Bays v. Hunt*, 60 Iowa,
251; *Everett v. Railway Co.*, 59 Iowa, 243. It appears
that, after appellant had used the number of witnesses
allowed under the limitation, he made an offer of four
others on the same point, which offer was refused, and

the court, in making its ruling, made this observation: "The purpose of this offer, I suppose, is to save the right the counsel thinks was infringed by the ruling of the court. It is only a very little matter any way. As I understand, the court has the right to limit the number of witnesses on that topic, and the court has exercised that right. (Overruled or denied. Defendant excepts.)" The objectionable feature of the statement is that it tends to invade the province of a jury as to .the value of certain facts or proofs to be considered; and, if it had been said to the jury, it would doubtless be reversible error, if it should appear that it had reference to proofs in the case. This was an offer to prove statements to certain persons named, after much other proof on the same point had been introduced; and the precise point the court was considering was the refusal of additional evidence, and it is not unreasonable to think that the remark of the court was intended and understood as referring to the offer, and not to the testimony.in the case, or the fact sought to be established. In fact, it is our duty to so construe the remark, unless the contrary appears. In any event, under the state of the record, we do not think there was prejudicial error in the statements by the court.

V. Appellant asked certain instructions, which were refused, and in argument the correctness of such

5. INSTRUCTIONS: degree of elaboration required.

instructions is not questioned; but it is urged that they are substantially embodied in those given by the court, and we think the view of appellee in this respect is correct. It is true, the instructions asked elaborate the rules stated to a greater extent; but we think those of the court state the law with sufficient clearness to be a safe guide to the jury under the testimony. A brief statement will illustrate the difference to some extent between the instructions asked and given: The refused instruction states that it is not necessary to establish fraud by direct proof, but that it may be shown by circumstantial evidence, etc., the correctness of which could not be

questioned.  Now the question of fraud is the turning-point in the case.   The testimony in the main was directed to that question.   In fact it was all directed to that, barring that upon the question of value of the team and the damage.   The question was, for whom was the team bought?   The court submitted the question on the evidence in the case, a part of which was circumstantial and bearing on the question of fraud, and directed the jury to find the facts from the evidence. In such a case the jury must be presumed to understand that all the testimony tending to establish a fact is to be considered.   The circumstantial proofs in the case were only applicable to the question of a fraudulent combination between plaintiff and Belville, and we do not think the instructions asked would have been a better guide to the jury.   Plaintiff argues a refusal to give his second and fourth instructions asked, but they do not appear in the record, and of course we cannot consider them.

VI.   The court's fourth instruction is complained of, and is as follows:   "(4) If you find that plaintiff gave to W. R. Belville the sum of two hundred dollars as claimed, to be by said Belville used in the purchase of a team of horses for this plaintiff; and if you also find that said Belville used said money in the purchase of this team in question,—then it would be your duty to find a verdict for plaintiff, even though you should also find that said Belville claimed that he was purchasing said team for himself."   In argument the instruction is said to be argumentative, and that it gives undue importance to particular facts.   There is evidence that at Aberdeen, Dakota, the plaintiff gave to Belville two hundred dollars to purchase for him a team, and that the team in question was bought with the money, and we think the instruction a plain and proper statement to the jury that if, from the evidence, they believed such to be the fact, the team belonged to the plaintiff, and that no statements of Belville should defeat his

6. ——: ownership of replevied horses: declarations of agent.

right of recovery. The instruction is not argumenta-
tive, nor does it give undue prominence to the point.
Two other instructions tending to guard the jury
against the plaintiff's being bound by statements made
by Belville, whether contradictory or otherwise, were
given; but in each instance the instruction is guarded
with a proviso that it is only applicable if from the
testimony it appears that plaintiff furnished the money
with which the team was bought. This point was a
particularly prominent one in the case, and it does not
appear to us that it was made unduly so. It is to be
kept in mind that these alone are not the instructions of
the court. In the ninth instruction the jury is told that
if the claim of plaintiff is false, and the team belonged
to Belville, and the purchase was a fraud to keep the
property from the possession of Belville, then the
defendant should recover; and in the tenth instruction
the jury is told that the plaintiff must recover on the
strength of his own title, and that, unless the plaintiff
has established his own title under the evidence, the
verdict must be for the defendant. The case, under the
instructions of the court, seems to have been very fairly
submitted.

VII. It is urged that the verdict of the jury is
excessive. A point especially pressed in argument is
<span>7. VERDICT: ex-<br>cessive: based<br>on evidence<br>and instruc-<br>tions not<br>excepted to.</span> that the value of the team is shown to be
one hundred and ninety-five dollars, and
the damage for detention for a period of
about eight months is fixed by the jury
at $260.40. On the question of damage the court
instructed the jury that, in addition to the value of the
team, "You are also to assess such additional sums, as
actual damages for the detention thereof, by way of
loss for its use, as you find, from all the evidence, the
same to be established in the market where purchased,
for such a team as this one in question, and in its con-
dition as appears proven. (Modified by adding, from
date until now.)" The instruction is quoted as it
appears in the abstract. No exception was taken to
this instruction. In fact, it is said in argument, and not

disputed, that it was given at the instance of the appellant. It will be noticed that the instruction directs the damage to be estimated on the value of the use of the team from the date of the levy to the time of trial. With the instructions thus approved by appellant, it is not for us to pass upon the correctness of the rule; and the only query for us is, does the testimony under the rule given, sustain the finding? The jury, under direction of the court, found specially as to the value of the use of the team, and fixed it at $1.05 per day. The testimony as to such value in that locality is meager. One witness fixes the value of the use of an ordinary team at $1.50 per day. Another thinks the value of the team in question at that period would be nothing. The testimony as to the capacity of the team for work is conflicting. It is certainly of a character to sustain the special finding. Appellant cites us to the case of *Romberg v. Hughes*, 18 Neb. 579; 26 N. W. Rep. 351. With a different record we should be disposed to consider that case with other cases seeming to announce a rule in conflict with it. The record of this case controls the question. A rule, as given by the court and accepted, has been followed by the jury, and we think it now binding upon the parties.

AFFIRMED.