THE MERCHANTS' UNION BARB-WIRE COMPANY v. THE CHICAGO, ROCK ISLAND AND PACIFIC RAILWAY COMPANY.

Railroads in Streets: DAMAGES TO LOT-OWNERS: TITLES: ACQUIESCENCE: JOINT TENANCY. In 1874, Y. and W. were the joint owners of lots abutting upon a city street on which defendant's railroad tracks are now laid, and plaintiff, as the grantee of Y. and W., by an action in equity, seeks to recover damages, under section 464 of the Code, for such use of the street, and to abate the tracks as a nuisance. The track nearest to plaintiff's lots was laid in 1870, when lot-owners had no legal right to object or to demand

damages. Y., one of the owners in 1874, at that time consented to the laying down of the other track, of which alone complaint is made, though almost the whole street was at that time, and is yet, occupied with defendant's tracks and used for railroad purposes. No complaint was made of the track in question by any owner of the lots in question until 1883, eight and one-half years after it had been laid down. *Held—*

(1) That Y.'s consent to the laying of the track, though merely oral, was binding on himself, and also, under the circumstances, on his co-tenant W., and that neither they nor their grantee could recover damages or object to the track, especially after so long acquiescence. (See *Pratt v. Railway Co.*, 72 Iowa, 249.)

(2) That the fact that another person held a tax title on the lots in 1874 was immaterial, as Y. and W. afterwards acquired that title also, and their continuing acquiescence in the use of the street was equivalent to a new parol license.

(3) That the fact that the tracks were laid in the usual manner, with the rails above ground, and not planked between, so as to make a level street, and that cars which were filthy and offensive were allowed to stand thereon, was no ground for damages,—such use of the street appearing to be according to common usage in such cases, and fairly within the contemplation of the parties when consent to lay the tracks was given, and the owners of the lots having for so long a time acquiesced in such use.

*Appeal from Polk District Court.* — HON. JOSIAH GIVEN, Judge.

FILED, FEBRUARY 12, 1890.

THE plaintiff is the owner of certain lots, which are bounded by Vine street, in the city of Des Moines. This action was brought to recover damages for the alleged unlawful laying down and operating two railroad sidetracks in said street, opposite to said lots. There was a trial upon the merits, and the petition was dismissed. Plaintiff appeals.

*Whiting S. Clark*, for appellant.

*Thos. S. Wright* and *Cummins & Wright*, for appellee.

ROTHROCK, C. J.—I.   The action was commenced on December 22, 1883.   An answer was filed, and, on the seventh day of May, 1885, the plaintiff demurred to the answer.   The demurrer was sustained, and an appeal was taken to this court, and the ruling of the district court sustaining the demurrer was affirmed. See 70 Iowa, 105.   When the cause was remanded to the court below, the defendant withdrew its answer, and on its motion the plaintiff was required to divide the petition into separate counts, and an amended and substituted petition in equity was filed, in which judgment was demanded for damages, and an injunction was asked to abate and remove the sidetracks from the street, on the ground that they constituted a nuisance. This amended and substituted petition was answered at great length.   It is not deemed necessary to set out the averments of the answer in full.

By the original petition and answer several questions were presented, which were considered by this court on the former appeal.   One of the tracks, being the one on the south, and nearest plaintiff's property, was laid down in the year 1870, and it was determined on the former appeal that at that time the "cities of this state had no authority to permit or prohibit the construction of railroads over or along their streets," and that the owners of lots abutting on the streets could not recover damages for the use and occupancy of the streets by railroads.   It was further said in that opinion that "defendant, having commenced the use of the first sidetrack at the time when it was authorized so to do, free from the claim of abutting lot-owners for damages, cannot now be made liable therefor."   This would seem to have disposed of the claim for damages arising from the construction of the first or southerly track, unless there might be some foundation for a claim for damages for improper use of the track to the injury of the plaintiff.   But it was held in the former opinion that, as the more northerly sidetrack was laid in the year 1874, the owner of the abutting property is entitled to recover

damages under section 464 of the Code, which is as follows: "They [the city council] shall also have the power to authorize or forbid the location or laying down of tracks for railways and street railways, on all streets, alleys and public places; but no railway track can thus be located and laid down until after the injury to property abutting upon the street, alley or public places upon which such railway track is proposed to be located and laid down has been ascertained, and compensated in the manner provided for [taking private property for works of internal improvement, in chapter four of title ten of the Code of 1873]." It will be seen, by reference to the former opinion, that both tracks were authorized to be laid down by the city council. It was averred in the answer that the northerly track was laid down in pursuance of a resolution of the city council, which was adopted upon the petition of certain owners of lots abutting upon the street. It is stated in the opinion on the former appeal that "it is not averred that the owners of the lots upon which plaintiff's manufactory is situated united in the petition."

In the answer filed after the cause was remanded, the following among other averments were made: "(2) And for further answer to the substituted petition, and all amendments thereto, defendant says that the tracks, and each of them, mentioned, were laid with the written consent of the persons named in defendant's previous answers herein, at the times in said answer stated; and, in addition to the said written consent, defendant had a verbal consent of all persons interested in the property abutting on the street where said tracks were laid, and that with such consent, both verbal and written, said tracks were laid at the place and in the manner they are laid, and have been maintained and operated at said place, and in the manner constructed and in the way operated, ever since. They were so laid with full knowledge and acquiescence of all persons interested in said property, up to the time of the bringing of this suit; and the said tracks thus

located, constructed and used were, by the persons interested in said real estate, including this plaintiff, for many years prior to this action utilized as appurtenant to said premises."

The issues having thus been made up, the court, with the consent of the parties, entered an order transferring the cause to the equity side of the court, and a full trial was had in accord with the forms of equitable proceedings, and the cause stands for trial in this court anew, and it is to be determined upon a preponderance of the evidence. Much of the argument of counsel is devoted to the question whether the laying down of the track in 1874 was in the nature of a permanent structure, for which the damages were entire, so that the statute of limitations was put in operation when the structure was completed; and counsel have discussed at great length what is claimed to be a conflict between the cases of *Cain v. Railway Co.*, 54 Iowa, 255, and other cases, on the one hand, and the opinion in this case on the former appeal, and the late case of *Pratt v. Railway Co.*, 72 Iowa, 249, on the other hand. We do not think it is necessary to enter upon a discussion of this question, further than to say that in *Cain's case*, the sidetrack in controversy was laid down in direct violation of an ordinance of the city, while in the case at bar and in *Pratt's case*, the tracks claimed to be nuisances were laid down and operated by the express authority of the city council; and we may say, further, that this court has not at any time determined that, when a railroad track has been laid down in a street with the permission of the city council, successive actions for damages may be maintained by an owner of abutting lots. We are of the opinion, however, that this case should be determined upon the issue presented by the averments of the answer, which we have above set out. The issue is squarely presented whether the track last laid down was constructed in pursuance of a parol license of the then owners of the lots which are now owned by the plaintiff. If the then owners, either

in writing or by parol, joined with the owners of the other lots abutting on the street in an agreement that the track might be laid down and operated, and in pursuance of that agreement the defendant laid down its track, and has continued to operate it, the case surely presents all the elements of estoppel, not only as against the then owners of the lots, but as against their subsequent assignees or grantees. A subsequent grantee of the lots would be charged with notice of all of the rights of the defendant, from the fact that it was in possession of that part of the street upon which the track was laid.

We now come to a consideration of the facts which we think are established either without conflict or by a fair preponderance of the evidence. In the year 1874 the lots in controversy were owned by Dyer H. Young and John E. Williams. They acquired the title from S. R. Ingham in the year 1866. Before the sidetrack was laid, in 1874, one Ankeny, who was part owner of an oil mill on the same side of the street, and west of the lots belonging to Williams and Young, circulated a petition among the lot-owners, by which those who signed it consented to the laying down of the track. While it is true that neither Young nor Williams signed this petition, yet we think it is fairly shown by the evidence that Young was present when the track was staked out by the engineer, and that he assented to it as fully as the other property-owners along the south side of the street. It was a matter of discussion among the property-owners, and all of them appear to have been aware of the fact, that at that time abutting property-owners were to be consulted, at least, before a street could be appropriated for the use of railroad tracks. We have said that Young and Williams were then the owners of the lots. It is claimed by counsel for appellant that at that time James Callanan held a tax title to the lots. This we regard as wholly immaterial. This is not an action for ejectment for the trial of adverse claims of title. If Young and Williams

were the owners of the patent title, as they appear to have been, and gave their consent to lay down the track, such consent must be regarded as continuing. They acquired whatever right Callanan had by a conveyance from him long before the plaintiff purchased the lots, and by their subsequent acquiescence in the use of the track they were bound the same as if they had given a new parol license after they acquired whatever interest Callanan had by virtue of his tax title.

Another strong circumstance against any claim for equitable relief on the part of the plaintiff is that, so far as appears, neither Young nor Williams, nor any other owner of the property, made any complaint of the occupation of the street from May, 1874, until this suit was brought, in December, 1883,—a period of about eight and a half years. The plaintiff purchased the lots in the year 1882, with both tracks of which it complains in the street, and in use by the railway company. Another fact which is entitled to consideration is that nearly the whole width of Vine street was, prior to 1874, used as a railroad street, and, from a point east of plaintiff's lots west to the Des Moines river, there are and have been four railroad tracks along the street, and on either side there is a barb-wire factory, a linseed-oil mill, a soap factory, flouring mill, etc., and travel by ordinary vehicles along the street, except at the outer edges, has not been practicable. The main line of the road, which is a great thoroughfare from east to west, runs through the street, and a passenger depot is located nearly opposite to the plaintiff's lots. All these circumstances appear to us to be very strongly corroborative of the testimony of the witnesses who state that the sidetrack in question was laid down with the consent of the owners.

But it is claimed that no consent of Williams, who was an owner in common with Young, was shown by the testimony of any witness. It may be the law that the consent of one tenant in common that the land held

in common may be appropriated for right of way for a railroad will not bind his co-tenant; that a conveyance by him for that purpose is good only for his own interest; or that the exercise of eminent domain by condemnation proceedings, when but one of two owners is made a party, is not binding on the other. But that is not the question presented for our consideration. The owners of lots abutting on a street have no title to the street. When a railroad track is laid in the street, the land abutting on the street is not appropriated to a public use. The right of such an owner is not within the constitutional provision requiring just compensation to be made to the owner of land appropriated for public use. Without the statute above cited, the owner of abutting property is not entitled to damages, and, under the statute, his claim is one for damages only. We think that, under the facts of this case, taking into consideration the lapse of time and the notoriety of the occupation of the street, and the further fact that the track which was lawfully laid in 1870 is the one nearest to plaintiff's lots, the plaintiff has not shown that it is entitled to equitable relief on account of the appropriation of that part of the street in which the track was laid in 1874. That it was competent for the then owners to waive their right to damages by parol, and that such waiver cannot be revoked by their guarantee, was held in *Pratt v. Railway Co.*, 72 Iowa, 249. It was a mere claim of damages to the lots, and, even if the consent of Williams was not expressly shown, we think that such a consent could be made by Young, and that it would bind Williams, especially in view of the circumstances to which we have called attention.

II. It is claimed that the plaintiff is entitled to damages because the railroad tracks are laid in the usual manner, with the rails above ground, and not planked between, so as to make a level street, as is usual at street crossings; and that the tracks have been improperly used, by allowing cars to

be stopped thereon, which at times have been filthy and offensive. As we have found that the remote grantors of the plaintiff consented to the laying down of the track which was laid in 1874, and that the track laid in 1870 was lawfully laid, the defendant had the right to occupy and use its said tracks in the ordinary and usual manner of using such tracks, and we find no evidence in the record that they were used otherwise. The consent to lay the track was given, and it does not appear that any claim or demand was ever made that the surface of the street should be raised to a level with the top of the iron rails, and it is fair to be presumed, from the long acquiescence in the use, that the track was constructed as it was intended by the owners of abutting lots that it should be.

We have thus disposed of this cause without determining the question of the statute of limitations. It appears to us, after a full and thorough examination of the whole record, that the plaintiff has no just ground of complaint, and that it has no legal or equitable right to recover damages of the defendant. The decree of the district court will be         AFFIRMED.