E. C. Preston v. The City of Cedar Rapids, Appellant.

| 95 | 71 |
| 98 | 376 |
| 95 | 71 |
| 111 | 158 |
| 95 | 71 |
| 122 | 692 |
| 95 | 71 |
| f125 | 353 |

**Waiver:** change of grade. Where a property owner, after the adoption of an ordinance fixing a grade different than that in conformity to which he had improved his property, signs a petition for improvements to the street, he will be estopped from claiming damages resulting from improvements made upon said last established grade, though the ordinance did not fix, nor the petition refer to, any particular grade. He must have known that the improvements petitioned for by him would be made on the grade last established.

Measure of damages. In determining the difference in the value of improved property before and after change of grade, as the measure of damages caused by the change, it is proper to consider the use and purpose for which the property was intended.

**Ordinance:** yeas and nays: special charter. Code, 1873, section 498, requiring the yeas and nays to be called and recorded on the passage and adoption of an ordinance by a city council, does not affect the cities with special charters.

Same. Where the only provision regulating the voting on the passage of an ordinance by the council of a city under a charter is a rule, adopted by the city, that "all votes taken on the adoption of ordinances shall be taken by the yeas and nays," it is sufficient for the record to show that all the alderman voted for the ordinance.

Publication. Under a city charter requiring publication of ordinances, and the recorder to certify of record to the publication "when the same shall have been published," the certificate of the recorder need not show dates of publication.

Same. Under a city charter requiring the recorder to certify of record to the publication of ordinances, the recorder certified to,

but did not show the dates of publication of an ordinance for a change of grade. The ordinance was passed in 1875. Owners of property on the street affected by the change acted upon this ordinance in erecting buildings in 1877 and 1878. One of the owners acquired his knowledge of the passage of the ordinance by reading it in the newspapers, and the city engineer, in making a survey for this owner when he erected his building, showed the grade as established by this ordinance. *Held*, sufficient to show the ordinance was published shortly after its passage, and before the owner last mentioned erected his building.

**Evidence:** LIMITING WITNESSES. The court in its discretion, in an action for damages for a change in grade, can limit the number of witnesses touching the value of the property, to seven on each side.

SAME. Where an order has been made limiting the number of witnesses on an issue, and a witness offered by one of the parties proves incompetent such party is not entitled to offer another witness in his stead.

*Appeal from Linn District Court.*—HON. J. D. GRIFFITH, Judge.

MONDAY, MAY 27, 1895.

Action to recover damages to plaintiff's property by reason of the change of grade of the street upon which said property abuts. From a verdict and judgment against the defendant, it appeals.—*Reversed.*

*Lewis Heins* for appellant.

*Hubbard & Dawley* and *Jamison & Burr* for appellee.

Kinne, J.—I. In 1875 the defendant city passed an ordinance establishing a grade on First avenue. In 1877 or 1878 plaintiff owned one twenty foot front lot on said avenue, and his father was owner of the adjoining twenty-foot front, upon which they erected a three-story brick block, for commercial purposes, known as the "Preston Block." The ordinance establishing the grade was passed prior to the erection of said block, and the building was erected in accordance with said

grade.   In 1887 plaintiff acquired title to the twenty
feet formerly owned by his father.   September 3, 1886,
defendant city passed an ordinance changing the grade
of the street in front of plaintiff's premises; and in
August, 1887, defendant permanently improved said
street, by grading, guttering, and paving the same, and
lowered the surface of the street to conform to the
grade last established.   The last grade was about a
foot lower than the grade established prior to the time
said block was erected.   Plaintiff's damages by reason
of said change in grade have not been assessed or paid.
Plaintiff claims that by reason of the change in the
grade his property has been damaged in the sum of over
three thousand dollars.   The defendant city denies
each and every allegation of plaintiff, except that it is
a municipal corporation.   Claims that plaintiff is
estopped from claiming damages because, as it alleges,
he petitioned the city to make the improvements for
which he claims damages, and that said improvements
were made at his request; that he has waived his right
to damages.   The plaintiff, in a reply, denies all of the
allegations of the answer relating to his having signed
a petition for improvements.   The cause was tried to a
jury, and a verdict returned for plaintiff for one thou-
sand three hundred dollars, upon which a judgment was
entered.

II.   At the commencement of the trial, and upon its
own motion, the court limited the number of witnesses
touching the value of the property to seven upon each
side.   It is contended that this was error.   The
right of a trial court to limit the number of
witnesses who may be called to testify to a given
point has been too often recognized by this court to be an
open question.   It was said in *Kesee v. Railroad Co.*,
30 Iowa, 80:  "A *nisi prius* court must be permitted to
exercise a discretion as to the number of witnesses, the
order and manner of their examination, etc., in the case

before them, else examinations and trials might be indefinitely prolonged. In the absence of manifest abuse of such discretion, an appellate court ought not to interfere." In *Bays v. Herring*, 51 Iowa, 291, 1 N. W. Rep. 558, we said, "The trial court must, of necessity, have power, in the exercise of a legal discretion, to control the number of witnesses that should be examined to establish any fact." *Everett v. Railroad Co.*, 59 Iowa, 244, 13 N. W. Rep. 109, *Bays v. Hunt*, 60 Iowa, 254, 14 N. W. Rep. 785. In *Minthon v. Lewis*, 78 Iowa, 622, 43 N. W. Rep. 465, we held that the court might limit the number of witnesses on any point in the case. See, also, *McConnell v. City of Osage*, 80 Iowa, 293, 45 N. W. Rep. 550. Counsel for appellant called seven witnesses to testify to the value of the plaintiff's real estate before and after the change of grade in 1886. It appeared upon the examination of two of them that they had no such knowledge of the value of the property as qualified them to testify relating thereto. Whereupon, he proposed to call other witnesses to the same point, and the court refused to hear them. It is claimed that the order limited the number of witnesses "to give testimony on the damages and value to seven on a side," and, as only five of the seven he had called did give such evidence, he was entitled, under the form of the order, to call two more. The order limited the number of witnesses upon the question of value of the property to seven on each side. Defendant was not prejudiced by the order. It knew before the case began that it was only entitled to call seven witnesses upon the question of values of the real estate. If two of its witnesses showed a lack of knowledge of values of the realty, and hence were not competent to testify thereto, that was no reason for setting aside or ignoring the order. It was defendant's business to know before it called its witnesses that they possessed the requisite knowledge to testify touching

that matter.   It is urged that while this rule is proper, as applied to collateral issues, it should not be held applicable to the main issue in a case.   We discover no reason for limiting the application of the rule to a particular class of cases, or to certain issues.   The power thus given trial courts, when discreetly exercised, is alike applicable in all cases, and to all issues.   The only question is, did the court, in this case, abuse its discretion?   We see no reason for so holding.   The preponderance of the evidence is not necessarily determined by the number of witnesses on each side who testify touching the same facts.   In our judgment, the court very properly exercised its discretion, and there was no error in refusing to hear additional witnesses offered by the defendant as to the value of the real estate.

III.   Plaintiff testified that he was acquainted with the fair market value of the property before and after the change in the grade.   He was asked what its fair market value was for the purpose for which it (the building) was erected.   Another witness testified as to the market value of the property for commercial purposes.   It is said that the above is not the proper measure of damages; that the measure of damages was the difference in value just before and after the change in the grade.   We do not think that there was error in admitting this evidence.   Now, upon what is this difference in value based?   Manifestly, in part, upon the use the property is intended for, and how the value of the property is affected, if at all, in view of the purposes for which it is adapted or used.   In other words, in determining the market value, or difference in value, we take into consideration the uses and purposes for which the building was erected.   The evidence tended to show that the building was used for stores and offices.   Such, then, was the use, whether it be called "commercial" or "trade," or by some other

name. In either case it is its market value. The questions did no more than to call for the market value before and after the change in the grade, considering the use and purposes to which the buildings were adapted. *Stewart v. City of Council Bluffs,* 84 Iowa, 61, 50 N. W. Rep. 219. We discover no error in the ruling.

IV. Error is assigned upon the ruling of the court in admitting the ordinance in evidence, passed in 1875, establishing a grade on First avenue in defendant city. It is said that the ayes and nays were not called and recorded on the passage of the ordinance, and hence it was not legally passed. Code, section 493, requires that "on the passage or adoption of every ordinance,   *   *   *   the yeas and nays shall be called and recorded." The defendant city is acting under a special charter, and was never incorporated under the general incorporation laws, of which said section 493 of the Code of 1873 is a part. Nor does the law make said section applicable to cities acting under special charter: Code, section 551; Acts Twenty-first General Assembly, chapter 93, section 2; Acts Twenty-second General Assembly, chapter 14, section 2; Acts Sixteenth General Assembly, chapter 116, section 21. It does not appear, nor is it claimed, that the charter of defendant city requires that upon the passage of an ordinance the yeas and nays shall be called and recorded. Rule 18 adopted by said city, and which was offered in evidence by it, provides that "all votes taken on the adoption of ordinances shall be taken by yeas and nays, each member upon his name being called, unless for special reasons he be excused by the council, shall declare openly and without debate, his assent or dissent to the question." The record before us shows all of the aldermen voted for the adoption of this ordinance. Inasmuch as there was no statute or rule requiring that the yeas and nays be *recorded,*

we do not think that the ordinance can be successfully assailed because no record was made of the vote. It is true the record does not show that the yeas and nays were called, but it does show that all of the aldermen voted for the ordinance. Under such circumstances, we may well presume that the ordinance was adopted or passed in the manner required by the rule. *Brewster v. City of Davenport,* 51 Iowa, 428, 1 N. W. Rep. 737. All of the cases cited by appellant arose in municipalities organized and acting under the general incorporation law, and therefore are not applicable in this case.

V.   Objection is made to the ruling of the court admitting the certificate of the recorder of the defendant city showing the publication of the ordinance. Section 24 of defendant's charter provided that ordinances shall be recorded in a book kept for that purpose, and shall be signed by the mayor and attested by the recorder. It also provides that the "recorder shall also certify in said record book to the publication or posting of ordinances recorded therein when the same shall have been published and posted." It also provides that before ordinances take effect they shall be "published in a newspaper printed in the city, at least ten days, or posted in two public places in each ward, for the same length of time." The certificate of the recorder was to the effect that the foregoing ordinance has been published, as provided by law, in the *Daily Republican,*—a newspaper published in said city. The certificate does not show the dates of publication. It appears that the ordinance was passed on February 19, 1875. It also appears that the owners of property on First avenue acted upon it in 1877 and in 1878, when they erected their buildings. It appears also that plaintiff acquired his knowledge of the fact of the passage of the ordinance of 1875 establishing a grade on First avenue from having read it in the newspapers. It appears also that

when the building was erected upon plaintiff's lot the city engineer made a survey showing the grade as made by the ordinance of 1875. From these and other facts, it is fair to presume that the publication certified to was made soon after the passage of the ordinance. The ordinance introduced in this case is the original ordinance as it appears in the records of defendant city, with the recorder's certificate attached thereto. The charter of defendant required the recorder to certify in said record book to the publication. This he did. True it is that it would have been proper to have set forth in the certificate the several dates of publication, but, in view of the charter provision, we are not authorized to say that the certificate, as it appears, is not a certificate "to the publication" of the ordinance. The only matter of doubt is as to whether this publication was in fact made. We have set out facts from which we think the court was justified in holding that the ordinance was published shortly after its passage, and prior to the time plaintiff erected his building.

VI. The main contention in the case arises on the defense of estoppel or waiver pleaded by the defendant. The evidence tended very strongly to show that about April 1, 1887, and after the adoption of the last ordinance fixing a grade different from that of the ordinance of 1875, the plaintiff and other property owners upon First avenue signed the following petition: "We, the undersigned resident owners of property abutting First avenue between Fourth street and the Cedar river, respectfully petition that your honorable body, proceeding under section 466 of the Code of Iowa, and Ordinance 166 of the City of Cedar Rapids, do order to be laid on said First avenue, between said limits, to-wit, between Fourth street and the Cedar river, cedar block pavement, guttering and curbing." The court instructed the jury that the petition did "not amount to either a waiver of damages, if any, nor does

it operate as an estoppel, and the same will not be considered by you." An instruction embodying the opposite views was asked and refused. In support of his contention, counsel for the city relies upon the following cases: *Pratt v. Railway Co.*, 72 Iowa, 249, 33 N. W. Rep. 666; *Cook v. Railroad Co.*, 40 Iowa, 451; *Merchants' Union Barb-Wire Co. v. Chicago, R. I. & P. Ry. Co.*, 79 Iowa, 616, 44 N. W. Rep. 900; *Justice v. Lancaster*, 20 Mo. App. 559; *Cross v. City of Kansas*, 1 S. W. Rep. 749, 90 Mo. 13; *City of Burlington v. Gilbert*, 31 Iowa, 357; *Vaile v. City of Independence*, 22 S. W. Rep. (Mo. Sup.) 695; *Hembling v. City of Big Rapids*, 50 N. W. Rep. (Mich.) 741; *Collins v. City of Grand Rapids*, 54 N. W. Rep. (Mich.) 889; *Andrus v. Board*, 6 South. Rep. (La.) 603; *Dupre v. Board*, 8 So. Rep. (La.) 593, and other cases. In *Pratt's Case*, 72 Iowa, 247, 83 N. W. Rep. 666, the action was to recover damages caused by the construction of a railroad along the street upon which plaintiff's property abutted. One defense was that the road was constructed with the consent of plaintiff. It was held that such consent was a waiver of the right to recover damages. *Cook's Case*, 40 Iowa, 451, and *Merchants' Union Barb-Wire Co.'s Case*, 79 Iowa, 616, 44 N. W. Rep. 900, are in principle, like *Pratt's Case*. In *City of Burlington v. Gilbert*, the defendant, in his petition, expressly asked for the change of grade, and, in express terms, waived all damages. The cases of *Cross v. City of Kansas* and *Vaile v. City of Independence* are, in principle, like *Gilbert's Case*. In *Hembling v. City of Big Rapids*, it appears that plaintiff petitioned for the establishment of a grade, and the grading of the street. It was held, he could not recover damages caused by stopping the flow of water resulting from the work. In *Collins v. City of Grand Rapids*, the plaintiff, being familiar with the grade established, petitioned the city council to grade the street abutting his lot. He sued

the city for damages because the improvement pre-
vented access to his lot, and the case was held to be
within the ruling in *Hembling's Case.* The case in 20
Mo. App. was where one signed a petition requesting
the construction of a bridge, knowing that, in order to
reach the bridge, certain approaches would have to be
erected which would raise the surface of the street in
front of his premises. He was held estopped. The
cases in 6 and 8 Southern Reporter are where tax-pay-
ers were held estopped from setting up the invalidity of
a tax when they petitioned for the passage of ordi-
nances levying the tax, and actively supported and
voted for the ordinances, when submitted to a vote of
the taxpayers. Several of the cases above referred to
are so different in facts that they cannot be considered
as authority for the holding contended for by the
defendant in this action. On the one hand, it is con-
tended that, in determining as to whether plaintiff
is estopped, we are to look only to the petition, and
what was asked therein, while, on the other hand, it
is claimed that in signing the petition plaintiff must
be held to have acted in view of the then established
grade, and that, having invoked the action of the coun-
cil, he must be presumed to have acted in the light of
the circumstances as they then existed. The ordinance
referred to in the petition was a general ordinance of
the defendant city, authorizing it, by resolution, to
order streets to be paved and otherwise improved.
Under it, such resolution is required to be published
for ten days in a newspaper in said city, and an oppor-
tunity is afforded thereafter to all persons to appear
and file written objections. So objections may be made
after the work is completed, and certain notice given of
the amount which it is estimated that each lot owner
should pay. Provision is also made for a levy of a tax
and its collection, and it is also provided that "no such
improvement as herein provided for shall be ordered or

directed unless a majority of the resident owners of the property subject to levy and assessment for such improvement petitions the city council therefor, or unless three-fourths of all the members of the city council shall, by vote, assent to the making of the same." This record shows that the council granted the prayer of the petitioners, and adopted a resolution or order for the paving of said First avenue. In this order is the following: "The surface of said paving and curbing shall be laid so as to conform to the established grade  *  *  *  as established by Ordinance 257 passed on the third day of September, A. D. 1886, and known as the Davis grade." The improvement, as actually made, was in accordance with the grade established in 1886. Now, at the time plaintiff petitioned for the paving, guttering, and curbing of the avenue in front of his premises, the ordinance of 1886, establishing the grade, was in force; and by its express terms it repealed the ordinance which was passed in 1875 establishing a grade past the same premises. No question is made as to the adoption and publication of this ordinance of 1886. He knew that if his petition was granted the improvements must be made in accordance with some established grade. Knowing that the grade of 1875 had been superseded by that of 1886, on what grade did he expect the improvements to be made? It is insisted that as the petition did not mention any particular grade, and as the ordinance therein referred to did not fix a grade, all that plaintiff asked was that the improvements be made; that the city was not induced to make the improvements upon the grade of 1886 by the petition of plaintiff; that the petition did not warrant the city in assuming that the improvements therein asked for should be made on the grade of 1886. We cannot accede to this view.  As we have said, plaintiff petitioned to have these improvements made. He knew

that they would and must be made in accordance with some established grade; and we think, in view of the fact that in law he was presumed to know that the ordinance of 1886, which repealed that of 1875, was in force, and fixed the grade he now complains of, that his petition must be interpreted and construed in the light of such facts. Plaintiff's situation is not different from what it would have been, had he petitioned in fact that the improvements be made in accordance with the grade established in 1886. That was the legal effect of what he asked. He had no right, under the circumstances, to think that these improvements would be made in conformity to the grade of 1875, which had been set aside years before. It seems to us, to say that he merely petitioned; that he is not bound, because he, in fact, did not ask that the improvements be made at any particular grade,—is to say that he did a meaningless thing, because he must have known that such work as he asked to be performed must be done on some established grade. In this view, the city was induced to act,—to do the work; and we think it had a clear right to act in the belief that the petitioners wanted the street improved on the grade which then existed. Although the city had passed the ordinance in 1886 establishing a grade, it had as yet made no attempt to conform the surface of the street to that grade, and until it did so no property owner could complain. Now, on the faith of the petition of plaintiff and other property owners, the city improved the street in conformity to the 1886 grade. Inasmuch as that was a change from the grade established in 1875, property owners affected by the change could recover damages from the city, if they could show that they had sustained any, by reason of such change of grade, and the physical change made in accordance therewith. We think the petition was an invitation—a request—to the city council to make the improvements in accordance with the then existing and

legally established grade. Having acted in strict con-
formity to plaintiff's request he ought not now to be
heard to complain that his property has been damaged
by the act of the city,—an act done at his instance. We
have treated this question upon the theory that plaint-
iff in fact signed the petition. There is some conflict
in the evidence touching this question. The court below
instructed the jury that plaintiff, in signing the peti-
tion, if he did sign it, would not be estopped to claim
damages, and that they should pay no attention to the
petition. This, we hold, was error.

VII.   Other errors are assigned. We have exam-
ined all of the questions thus presented, and discover no
reversible error, except as above pointed out.—
*Reversed.*