VACLAV STRITESKY AND HELEN STRITESKY, Appellants, | 98   373 |
                                                      | 116  325 |
v. THE CITY OF CEDAR RAPIDS.                          | 98   373 |
                                                      | 130  454 |

**Municipal Corporations:** HIGHWAY GRADE: *Construction of ordinance.*  A municipal ordinance, authorizing a street railway to enter upon a street and lay its tracks, subject to the right of the city to change or alter the grade of the streets, or make other necessary improvements thereon, does not render the city liable to an abutting property owner for damages due to a change of the grade made by the company in laying its tracks, even though such change corresponds to some extent with the ordinance providing for a change in such grade, which the city had never acted under, or attempted to enforce.

*Appeal from Linn District Court.*—HON. J. H. PRESTON, Judge.

WEDNESDAY, MAY 20, 1896.

PLAINTIFFS, the owners of lots 4 and 5, in block No. 13, of Carpenter's second addition to the city of Cedar Rapids, bring this action to recover damages to

their said property by reason of a claimed change in
the grade of the street in front thereof. It appears
that in 1875, the city passed an ordinance duly estab-
lishing a grade on the street upon which said lots
abut; that the improvements upon said lots were made
to conform to said grade, which was practically the
same as the then surface of the street. In September,
1886, the city duly passed another ordinance estab-
lishing a new and different grade, which provided for
the raising of the grade in front of said lots about
three feet higher than that heretofore established.
The city never took any steps to assess or ascer-
tain the damages to plaintiffs' property by reason
of such change of grade, and never, in fact, changed,
or authorized any one to change, the grade of said
street in front of plaintiffs' said lots, unless the author-
ity given the street railway company should be held
to have that effect. In October, 1891, the Cedar Rap-
ids and Marion City Railway Company was granted
the right to "enter upon and construct, maintain and
operate a single or double track railway, with the nec-
essary turnouts and switches, upon" the street in front
of plaintiffs' lots and other streets. Said ordinance
also provided: "The company, its successors or assigns,
shall, at its own cost and expense, keep in good repair
that portion of the paving of such streets and high-
ways as is now paved, which is included between the
rails over which the cars pass, and one foot outside of
the same, on either side, but not between the two
inside rails where a double track is used, except for
the distance of one foot on either side, as aforesaid,
and shall immediately, at its own cost and expense,
pave the portion of the streets included between the
rails of each track, and one foot outside of the same,
on either side, on all streets and avenues which may,
at any time be paved, or ordered to be paved, by said
city council, and the manner of laying such paving

and the materials used, shall be in accordance with the specifications furnished by the city engineer of said city." "During the construction and operation of said railway, said company, its successors or assigns, shall not unnecessarily impede the public travel on any of the streets or highways aforesaid, and shall leave all streets and highways and bridges, upon which it may enter, for the purpose herein authorized, in as good condition as they were at the date of said entry." "Sec. 6. The said company, its successors or assigns, shall hold the city harmless of any, and from any and all causes of action, liabilities and damages, caused or accruing through, or by reason of the construction and operation of said railway." By section 7, of the ordinance, it is provided that the rights and franchises granted, are subject to the right of the city "to change and alter the grade of any street, and to make all other necessary and expedient street improvements, * * * and upon the change or alteration of any grade, the said company, its successors or assigns, shall, at its own cost and expense, properly raise or lower its tracks, so as to conform to such grade as changed." It is averred that said railway company entered upon the street upon which plaintiff's property abuts, "and in a careless and negligent manner filled in and created a permanent embankment along the center of said street, about ten or twelve feet wide, and to the height of about three feet above" the 1875 grade, and constructed its railway thereon, ruining said street as a thoroughfare, and as a means of ingress and egress to and from plaintiff's premises, and creating a dam for surface water, throwing the same upon plaintiffs' premises, seriously impeding travel; by reason of which acts it is claimed plaintiffs' premises have been damaged in actual and rental value, and by reason of which plaintiffs have been compelled to raise their buildings and to fill in their

said lots at great expense. The city answered, admitting its corporate capacity, the passage of the ordinance referred to, the construction of the road under the ordinance, that no steps were taken to assess or pay plaintiffs any damages, and denies all other allegations of the petition. A trial was had to a jury, and on motion of the defendant a verdict was returned for it, on which judgment was entered. Plaintiffs appeal. —*Affirmed.*

*Rickel & Crocker* for appellants.

*Warren Harman* for appellee.

KINNE, J.—I. This case was determined in the court below upon the theory that the city was not liable for the acts of the street railway company which are complained of. While several questions are argued, the real question is as to the liability of the city. If we shall reach the conclusion that it is not liable, it will not be necessary to consider the other questions discussed by counsel. It is to be remembered that the city never in fact changed the surface of the street in front of plaintiffs' premises so as to make it conform to the ordinance of 1886; indeed it never took any steps to enforce the provisions of that ordinance. As the city had made no attempt to change the physical surface of the street, and make it conform to the grade established in 1886, the plaintiff is in no situation to complain unless the acts of the railway company are to be treated as the acts of the city. *Preston v. City of Cedar Rapids,* 95 Iowa, 71 (63 N. W. Rep. 580). The real question is, does the ordinance granting the right to the street railway company to enter upon streets and lay its tracks require the company to lay its track in conformity to the 1886 grade? We discover nothing in the ordinance

making any such requirement.    Counsel for appellants admit that the ordinance does not in terms so require. They insist, however, that such is its fair import. The claim is grounded upon the fact that in the ordinance the city reserved the right to change or alter the grade of streets, and the company was required to promptly conform to such changes as made. Now, while it is true that the grade of 1886 superseded that of 1875, still, as we have said, so long as the city took no steps to conform the then surface of the street to the 1886 grade, there was no damage for which plaintiff could recover. Had the ordinance granting the right to the street railway company, in terms, required it to construct its road in conformity to the established grade, the case would be ruled by *Preston's Case;* but it did not do so. The railway company could not, in the absence of express authority from the city, determine for it when the surface of the street, as it then existed, should be made to conform to the new grade. The city had not vested any such power in the street railway company, and until it did so, it could not be liable to a lot owner for an unauthorized act of the railway company which caused damages to him. *Preston's Case* is much relied upon by appellant. In that case plaintiff petitioned the city to make certain improvements in front of his property, and it was held he must have contemplated that they would be made on the then established grade. In this case the city authorizes the railway company to occupy certain streets, and to lay its tracks thereon. Now, in the absence of express provision authorizing it, can it be said that the city thereby, impliedly authorized the company to do that which the city had not as yet itself determined to do? The case in its facts is quite different from the one relied upon. The city did not, either expressly or impliedly, undertake to make the street railway company its agent to raise the grade of

the street in front of plaintiff's premises, to conform to the ordinance of 1886. If the company did so, it acted at its own instance, and is liable for any wrongful act which has produced damage. The case of *McKillop v. Railway Co.* (Minn.) (55 N. W. Rep. 739), is in support of our holding.—AFFIRMED.