McMaken v. Hayes.


## ASSESSMENTS—MUNICIPAL CORPORATIONS.

[Lucas (6th) Circuit Court, March 9, 1907.]

Haynes, Parker and Wildman, JJ.

WILLIAM V. McMAKEN v. BIRCHARD A. HAYES ET AL.

1. SUFFICIENCY OF VOTE OF COUNCIL ON STREET IMPROVEMENTS.

When the record discloses the fact that, during proceedings and meetings of the city council for street improvements and assessment therefor, certain members of the council were present just before the votes were taken, and does not disclose that any of said members left the room before voting, and it is definitely stated that the particular resolutions and ordinances were passed by a certain number of votes being "yeas," being the same number previously recorded as present, there is a substantial record of compliance with the statutory provision requiring the vote of the council for street improvements to be by "yeas and nays," although the form of such record is not approved.

[For other cases in point, see 6 Cyc. Dig., "Municipal Corporations," §§ 1280-1305.—Ed.]

2. BENEFIT TO ABUTTING PROPERTY FROM STREET IMPROVEMENT DETERMINED BY THE COUNCIL.

Whether or not abutting property has been benefited by street improvements is not to be determined alone by the market value of the property after the improvement has been made, as compared with its value before the improvement. The real question is whether there would be any potential benefits derived from the improvements, and the determination thereof is within the discretion of the council rather than for the courts.

[For other cases in point, see 1 Cyc. Dig., "Assessments," §§ 223-447.—Ed.]

3. FRONTAGE OF PROPERTY ON STREET AS BASIS FOR ASSESSMENT FOR IMPROVEMENT.

Where three separate lots, held in different ownerships, form a flatiron or wedge-shaped plat, bounded on three sides by public streets, the assessments for the improvement of adjoining streets should be assessed on each lot separately, although all three lots form a single plat of ground and are at the time used for a common purpose; and such assessment should be based on the shorter street frontage of each lot.

For other cases in point, see 1 Cyc. Dig., "Assessments," §§ 316-371.—Ed.]

[Syllabus approved by the court.]

O. W. Nelson, for plaintiff.

B. A. Hayes, for defendants:

Cited and commented upon the following authorities: *Toledo* v. *Sheill,* 53 Ohio St. 447 [42 N. E. Rep. 323; 30 L. R. A. 598]; *Walsh* v. *Baron,* 61 Ohio St. 15 [55 N. E. Rep. 164; 76 Am. St. Rep. 374]; *Walsh* v. *Sims,* 65 Ohio St. 211 [62 N. E. Rep. 120]; *Dayton* v. *Bauman,* 66 Ohio St. 379 [64 N. E. Rep. 433]; *Campbell* v. *Cincinnati,* 49 Ohio St. 463 [31 N. E. Rep. 606]; *Thatcher* v. *Toledo,* 10 Circ. Dec. 272 (19 R. 311); *Steckert* v. *East Saginaw,* 22 Mich. 104; *Blair* v. *Cary,* 24 O. C. C. 560;

Lucas County.

*Board of Education* v. *Best,* 52 Ohio St. 138 [39 N. E. Rep. 694; 27 L. R. A. 77].

**WILDMAN, J.**

This is an action brought by the treasurer to collect certain assessments for paving Fulton and Floyd streets in this city, and is defended by Birchard A. Hayes, as executor, et al., upon the grounds:

(1) That the assessments and all proceedings upon which they are based are entirely invalid by reason of the alleged fact that statutory requirements as to the taking of a vote by "yeas and nays" in the passage of certain resolutions and ordinances were not complied with.

(2) That assuming the validity of the proceedings for the construction of the pavements and the assessments for the cost thereof, the basis of the assessments was wrong in that too much frontage was charged against the lots assessed.

(3) That the property derived no benefit whatever from the paving of Fulton street, so that any assessment for such paving was improper.

The most important question, but the one which was not perhaps so much dwelt upon either in oral argument or in briefs, is this: Whether the ordinance and the resolutions upon which the assessment was based were properly passed.

The proceedings of the council show in each instance at the beginning of the session, just what councilmen were present. It is not stated that a call of the roll was made, but it is alleged in each instance that a certain number of the councilmen, and the requisite number for the passage of such resolution or ordinance, voted "yea," the names of the persons so voting not being specifically given in the statement of the vote. I have had the stenographer transcribe from his note, the evidence upon this subject as to each of these meetings, as shown by the journal of the board of councilmen, and from the transcript handed me I take by way of illustration one of the meetings and the record thereof.

From page 455, Vol. Q of the journal, it appears that a resolution to improve Floyd street from Ashland avenue to Fulton street by paving, etc., was adopted, seventeen persons voting "yea," or, as stated in the words of the record, "yeas, seventeen." It appears that there were present at the session, with regard to which I have just read, which was on May 12, 1890, councilmen, whose names are given, to the number of seventeen; one of the total membership of the council was absent. The names of these councilmen are given as present at the convening of the meeting. The record does not show whether any of the members who were present at that time left the room prior to the vote. It does

McMaken v. Hayes.

not disclose that any other member of the council came in from the time of the convening of council until the time the vote was taken.

I will not take time to read from the transcript of the various meetings. It is enough to say as to all of them that the record discloses the names of the persons who were present at the opening of the sessions, and what persons came in or what persons departed during the session; and, although the names of the persons voting "yea" at the time of the claimed adoption of each resolution or ordinance are not given, still the number voting "yea" in each instance coincides with the number stated in the earlier part of the record to have been present. It is insisted that this is not sufficient; that the statute requires the call of the roll and the announcement by each member of his vote. That the statute so requires is unquestionably true. The roll should be called and each member should announce his vote. As has been stated in the opinion in a case in our Supreme Court Reports, and has also been very forcefully asserted in a decision from another state cited to us, the object of the law is to place each member of the council upon his individual responsibility and also to inform the public how the member votes. It is the influence upon the mind of each member caused by the knowledge that the public will be informed as to how he votes that is the inducement to the requirement that he shall make public announcement of his vote upon the passage of each resolution or ordinance of the character such as we have here; that is, an ordinance of a permanent or general nature, or upon suspensions of rules so as to permit the ordinance to be read three times and passed at one meeting.

There is a case very close to the case at bar cited by counsel for defendants, *Steckert* v. *East Saginaw*, 22 Mich. 104. I will not stop to read it. There is much of the language in the opinion of Judge Cooley which perhaps might fully sustain the contention of counsel for defendants, and if it were the only case bearing upon this question which we have been able to find, we should perhaps be very greatly influenced by it; but there are other adjudications which we have had occasion to examine, and I will make reference to some of them in order that we may, if possible, ascertain the general current of authority upon the question of the sufficiency or insufficiency of such a record.

The case of *Barr* v. *Auburn* (*Vil.*), 89 Ill. 361, holds that where the journal of a board of trustees, six in number, of a village incorporated under Rev. Stat. 1874, Chap. 24, showed that only one member, naming him, was absent from the meeting of the board at which a certain resolution was passed, and contained this entry: "On motion of" [one of the members], "the following ordinance" [the one in question]

"was unanimously adopted," the showing of the journal was sufficient upon the question of the proper passage of the ordinance under Sec. 41 of said act, which provided that the "yeas and nays" shall be taken upon the passage of all ordinances; that the same shall be entered upon the journal of the board, and that the concurrence of a majority of all the members elected in the city council shall be necessary to the passage of any such ordinance.

The statute there is not essentially different from our own in the section relied upon by counsel for defendants.

The case of *Preston* v. *Cedar Rapids*, 95 Iowa 71 [63 N. W. Rep. 577], holds that where the only provision regulating the voting on the passage of an ordinance by the council of a city under a charter is a rule, adopted by the city, that "All votes taken on the adoption of ordinances shall be taken by the 'yeas and nays,'" it is sufficient for the record to show that all the aldermen voted for the ordinance.

In the case of *Downing* v. *Miltonvale*, 36 Kan. 740 [14 Pac. Rep. 281], with reference to a statute which provided that "All ordinances of the city shall be read and considered by sections at a public meeting of the council, and the vote on their final passage shall be taken by 'yeas and nays,' which shall be entered on the journal by the clerk," it was held that where the journal shows the full vote adopting the ordinance as a whole on its final passage, it will be presumed that it was read and adopted by sections.

See also *Brophy* v. *Hyatt*, 10 Colo. 223 [15 Pac. Rep. 399].

It might be interesting to read more in detail from these various cases, but we have concluded, although we do not approve of the practice which has been adopted, or, at least, was followed at one time in this city, in the recording of such votes as this, that there has not been such a departure from the law as, under the circumstances of this case, would justify a holding that the entire proceedings with reference to these assessments are invalid.

We think that, where the record discloses the fact as to each session of council which is under investigation that certain named members were present and it does not appear that those members or any of them departed from the session during the intervening time between its opening and the taking of the vote, or where it is indicated just which ones did depart, and where the record discloses, as here, not simply that the particular resolution or the particular ordinance was carried by a certain number of votes, but where it is definitely stated upon each occasion that there were so many "yeas," indicating that there must have been a taking of the vote by "yeas and nays" as to each individual

McMaken v. Hayes.

member so as to enable the chairman or other person counting the vote to determine just how many voted for the resolution or ordinance, it is to be presumed that the persons whose names are given and whose number would equal the number said to have voted "yea" are the same persons who did so vote. Our judgment then is, that these proceedings are not invalid for the reason suggested by counsel for defendants.

Much difficulty has been eliminated from our consideration of the case by the concessions of counsel for the plaintiff as to the invalidity of some of the assessments, with regard to which I need not go into detail—counsel have agreed as to those; but we are left with the inquiry whether too much frontage has been assessed as to certain of these lots, and also whether any benefit accrued to some of them by the construction of the Fulton street pavement.

Taking this latter matter first, it is urged by counsel for defendants that from the time that the Fulton street pavement was constructed the property has remained in the possession and ownership of the defendants and that the pavement has become out of repair and substantially useless, perhaps, so that the market value of the property is not enhanced by it. The question is not, however, whether the market value is at present greater by reason of the pavement than it was before the pavement was constructed, nor whether the pavement is of present use to any of this property. The question is whether at the time the pavement was constructed it was substantially beneficial to the properties, and we are not sufficiently apprised that the judgment of the council was at fault in this respect to justify a holding that the properties were not at that time benefited. For aught that appears, although no sales have been made of those lots or either of them, it might have been done. The market value may have been enhanced, or the pavement may have been useful in some other respects. The assessments seem to be pretty heavy upon these lots, and it is entirely possible that the properties are burdened far beyond the amount of any benefits received from the pavements, but this is so largely a matter of discretion with the council, a matter of judgment for them to exercise, that we do not feel justified in interfering with it.

It is also urged, as to the Fulton street pavement, that the improvements upon two of these lots, the three lots involved here being Nos. 14, 15 and 16, consist of a residence fronting on Ashland avenue, and it is claimed that with that building there is no very convenient or practicable way of improving the parts of the lots that abut on Fulton street, so as to make access to Fulton street therefrom particularly desirable or essential to the use of the properties. The three lots and

their surroundings may be described succinctly as follows: They lie within an angle formed by the intersection of Fulton street and Ashland avenue, north of said intersection, and almost exactly at this intersection Floyd street crosses, so as to cut off or pass along the southerly end of one of the three lots. The combined property is in a sort of wedge or flatiron shape, lot 14 being the northerly lot of the three, 15 the middle one and 16 the southerly one, lots 14 and 15 extending from Ashland avenue to Fulton street, and lot 16 abutting on Ashland avenue and Fulton and Floyd streets, having a frontage on Floyd street of 32.1 feet. On Fulton street all the lots have longer lines than on Ashland avenue.

Referring again, before leaving the matter, to the contention that has been made that the property as it is improved by a structure on lots 14 and 15 derives no great benefit from the paving of Fulton street, we think that it may justly be said that it is not altogether the present use that is made of the property but its potential use that fixes the market value of property and that such use is to be taken into account by the persons assessing the benefits. To what extent the property as a whole may be enhanced in value, if at all, by reason of the Fulton street. pavement we are unable to say, but that it may have been potentially benefited by the pavement, we think, is altogether probable, or, at least, not improbable. With the present residence on lots 14 and 15, it may not be desirable to build shops or business buildings of any kind on the parts of lots 14 and 15 abutting on Fulton street, but possibly either at the present time or some future time it might be practicable to do so to the advantage of the properties. We dismiss, then, this question as to whether or not the properties have been benefited by the Fulton street pavement with the conclusion that we can find no just ground for interfering in this respect with the jurisdiction and action of the municipal authorities.

Another contention made by counsel for the defendants is, that the city's estimate of the frontage assessed is wrong. It appears that lots 14 and 15 have each a frontage, if we call it such, on Fulton street, of fifty-six feet, and on Ashland avenue of fifty feet. The lots strike Ashland avenue at right angles so that the frontage is shorter on that avenue than on Fulton street. The same thing is true as to lot 16, which has a frontage on Ashland avenue of ninety-nine feet and on Fulton street of 129.34 feet. It is conceded, I believe, by counsel for plaintiff, that as to 14 and 15 the Ashland avenue frontage should be taken, and that the assessment, which has been upon the basis of fifty-six feet, is too great. We think that counsel are entirely right in this concession,

McMaken v. Hayes.

and that it is one that should be made. It is the conclusion at which we should have arrived as to these two lots, had the concession not been made.

As to lot 16, it is claimed now by counsel for plaintiff that the frontage on Ashland avenue of ninety-nine feet should be taken instead of 32.1 feet on Floyd street. In the case of *Toledo* v. *Sheill*, 53 Ohio St. 447 [42 N. E. Rep. 323; 30 L. R. A. 598], it was held, with reference to a corner lot, that the frontage to be assessed should presumptively be that on the shorter line. We have here, as to lot 16, not simply a lot abutting on two streets but we have one abutting on three. We have no doubt that the principle of the decision applies, and our judgment is, that the frontage contended for by counsel for defendants is the correct one; that is, 32.1 feet. It is urged by counsel for plaintiff that these three lots are substantially one property. There is but one improvement upon them and lot 16 is little more than a lawn or dooryard, it is said, appurtenant to the residence property on lots 14 and 15. It is said that a walk leading from the entrance to the house on lots 14 and 15, angles across a part of lot 16, so that the three lots should be taken together as one residence property and logically be assessed upon the Ashland avenue length or front. We think, however, that this contention of counsel for plaintiff cannot be sustained. It happens at the present time that no especial use is apparently made of lot 16 other than that stated, but, as in the other case, we are to consider not simply the present, but the future, uses that may be made of the property. The principle is just as applicable in favor of the defendants as it is against them. And it is to be remembered, as shown by the evidence, that the titles to the properties were, at the time of the assessments, in different people, lots 14 and 15 being owned by Mrs. Birchard Hayes, and lot 16 by the late Rutherford B. Hayes.

Our conclusion of the whole matter is, that the assessment should stand with the modifications which I have indicated: that lots 14 and 15 should be assessed each upon the basis of fifty feet front and lot 16 upon the basis of 32.1 feet. I believe that this disposes of all the questions that were presented. The decree of the court will be accordingly entered.

**Haynes** and **Parker, JJ.,** concur.