P. L. FOWLER, Appellant, v. THE DES MOINES & KANSAS CITY RAILWAY COMPANY.

Statute of Limitation: Obstruction of Street: Accrual of Action. Where a railroad is, upon permission by a city, permanently constructed in an alley, without compensation to an abutting landowner, no successive actions for damages will lie. A cause of action for existing and prospective damages arises when such road is built, and is barred after five years thereafter. *Cain v. Railway,* 54 Iowa, 255; *Wilson v. Railway,* 70 Iowa, 105, and *Harbach v. Railway,* 80 Iowa, 594, distinguished.

Same: Nonresident, What is Not. An Iowa corporation does not become a "nonresident" within the meaning of the statute of limitations because its nonresident creditors procure the appointment of a receiver by the federal courts, though no suit could be maintained in the Iowa courts pending the receivership, without leave of the appointing federal court. Code, 2533.

*Appeal from Clark District Court.*—HON. JOHN W. HARVEY, Judge.

TUESDAY, OCTOBER 2, 1894.

ACTION to recover for occupancy of an alley. Answer pleading the statute of limitations. Demurrer to answer, overruled. Plaintiff excepts and appeals. *Affirmed.*

*McEntire Bros. & Jamison* for appellant.

*Guernsey, & Bailey* for appellee.

KINNE, J.—I. The substituted petition alleges that in March, 1882, the Des Moines, Osceola & Southern Railway Company located its tracks in an alley running north and south through the city of Osceola, and constructed its roadbed and built a railroad track, completely obstructing said alley, and maintained and operated its road to the injury and discomfort of property owners adjoining said alley; that said use and occupation continued until March 1, 1885, when said road was placed in the hands of a receiver by the circuit court of the United States, and that said receiver continued to operate the road until June 1, 1888, when it came into the possession of the defendant by purchase, and it has ever since operated said road; that, at the time said Des Moines, Osceola & Southern Railway Company commenced obstructing said alley, plaintiff was the owner of a lot abutting upon said alley so occupied and used by said railway company; that said lot was improved, having a two-story brick business house thereon; that he still owns said property; that said road was located and constructed without plaintiff's consent, and without ascertaining and paying him any damages therefor, and trains have been operated thereon against his will, to his damage; that defendant has failed and refused to pay plaintiff any damages caused by the obstruction of said alley; that defendant is a trespasser in said alley, and said road and its operation are a nuisance, by reason of the motion and noise; that the road completely obstructs said alley; that it increases the danger to the buildings, and causes annoyance by the ringing of bells, rattling of trains, switching of cars, and by smoke emitted from the engines, and depreciates the rental value of said property; that it has permanently diminished the market value of said property. Damages in the sum of two thousand dollars are claimed, and a writ of injunction asked, permanently enjoining defendant from operating

the road, and compelling the removal of said obstructions from said alley, unless the damages assessed by the court are paid. · Defendant denies all of the allegations of the petition, except as otherwise admitted. Admits the organization of the Des Moines, Osceola & Southern Railway Company, which, with the consent and permission of the town of Osceola, did lay its track upon and along said alley; that it was permanently constructed, and has ever since been maintained; and that plaintiff owns the lot adjoining said alley. Admits that on April 11, 1885, said company was placed in the hands of a receiver by the United States circuit court, and said road was operated by said receiver until January, 1888, since which time it had been operated by defendant. Admits that the occupancy of said alley has been permanent in its nature. In a second count it is averred that on May 4, 1881, the council of the town of Osceola gave and granted to the Des Moines, Osceola & Southern Railway Company the right of way along and use of the alley mentioned in the petition, for the purpose of laying down, operating, and maintaining the track or tracks of said company; that in the fall of 1881, said company, in pursuance of said authority, laid down and constructed its railroad over and along said alley, in a permanent manner, and has ever since used and continued said line of railway; that plaintiff's cause of action for injuries, if any, accrued to him in March, 1882, from which time said railway has been in continuous occupancy and use of said alley; that said line of railway does not occupy any portion of plaintiff's ground; that more than five years have elapsed since plaintiff's cause of action accrued, and it is now barred. In a third count it is averred that said road was constructed on and along said alley with plaintiff's consent.

Plaintiff demurred to the second count of the answer: *first*, because the facts stated do not entitle the defendant to the relief demanded, or constitute

a defense to the action; *second*, because it shows that defendant first began to operate the road January 12, 1888; *third*, because it appears that the road was located and constructed in said alley without authority, and without compensating plaintiff for his damages, and is a continuing nuisance; *fourth*, that the conveyance of the road to defendant did not give it the right to use and occupy said alley, because it appears that the railway company under which defendant claims, was wrongfully occupying said alley. The court overruled the demurrer, and the plaintiff excepted, and elected to stand upon said ruling, whereupon judgment for costs was rendered against him. He excepted and appeals.

II. In one view of the petition, it may be said that the action is brought for the recovery of permanent damages to plaintiff's realty, caused by the erection, maintenance, and operation of defendant's railway in the alley upon which his lot abuts. There are, however, some allegations in the petition looking to a claim for damages by reason of depreciation in the rental value of plaintiff's property, as well as damages affecting permanently its market value. In either case the question to be decided is the same,—when did plaintiff's cause of action accrue? On the one hand, it is insisted that this is in fact a proceeding to recover just such damages to plaintiff's real estate as could have been assessed in an *ad quod damnum* proceeding, had one been instituted by defendant or its predecessors, and hence the cause of action accrued in March, 1882, when the original company entered upon the alley and constructed the road, and began its operation. On the contrary, it is urged that the acts of the defendant and its predecessors were in the nature of a continuing nuisance, for which successive actions will lie, and that the act of defendant in entering into possession of the railway, and in operating it, is a fresh injury, for which an action lies, and,

it having taken control within five years prior to the commencement of this suit, the action is not barred. It is also said that, touching the question of what is a continuous nuisance, in such cases, so that successive actions may be prosecuted therefor, the decisions of this court are not entirely harmonious. It seems proper, therefore, that we have clearly in mind the facts of this case, so that it may readily be seen wherein they differ, if at all, from those in cases which we shall presently consider. In this case, the railway company laid its tracks in the alley, and used and operated its road, with the express consent of the city of Osceola, given in a legal manner. The damages to plaintiff's abutting property have not been assessed or paid. The damages sought to be recovered are not on account of taking the property of plaintiff, but such as arise by virtue of the provisions of the statute giving damages to an abutting owner. Code, section 464. While plaintiff, seeking damages as an abutting owner, could not institute condemnation proceedings, he had a right to bring an action to recover his damages caused by the use and occupation of the alley by the railway company. *Mulholland v. R'y Co.*, 60 Iowa, 740, 13 N. W. Rep. 726; *Stough v. R'y Co.*, 71 Iowa, 641, 33 N. W. Rep. 149; *Harbach v. R'y Co.*, 80 Iowa, 593, 44 N. W. Rep. 348. He might, in such a case, enjoin the defendant from using the street until his damages were assessed and paid. *Harbach v. R'y Co.*, 80 Iowa, 593, 44 N. W. Rep. 348.

In support of plaintiff's contention that the injury was a continuing one, for which successive actions would lie, he relies upon the following decisions of this court: *Cain v. R'y Co.*, 54 Iowa, 255, 3 N. W. Rep. 736, and 6 N. W. Rep. 268; *Wilson v. R'y Co.*, 67 Iowa, 509, 25 N. W. Rep. 754; *Merchants' Union Barb Wire Co. v. Chicago, B. & Q. R'y Co.*, 70 Iowa, 105, 28 N. W. Rep. 494; *Harbach v. R'y*

*Co.*, 80 Iowa, 594, 44 N. W. Rep. 348.   In the *Cain*
case, the track complained of was a side track laid
upon a street in violation of an ordinance of a city.   It
appeared that the side track could have been laid with-
out using that part of the street prohibited by the
ordinance; that it was not necessary to the operation
of the road, but was built for the purpose of reaching
certain warehouses.   It was held that the nuisance was
a continuous one, which resulted largely from the
operation of the road, and human labor would not be
required to abate it, but it would be abated by ceasing
to use such labor.   On a rehearing, stress was laid
upon the fact that, the track having been laid in viola-
tion of a city ordinance, it was subject to be removed;
that, as the nuisance was of such a character that it
might be abated, it would be presumed that it would
be.   The court said: "Whether a railroad structure
which obstructs a highway or street should be deemed
permanent, not being such in the nature of things,
must depend upon the nature of such use.   We see
nothing to justify us in holding a railroad side track,
laid twelve feet further from the center of the street of
a city than is allowed by ordinance, is of such a char-
acter that it ought to be deemed permanent, and not
subject to removal."   In the *Wilson* case, the action
appears to have been to recover for rental value of
premises after the railroad had been laid upon an alley,
and prior to the time the damages were assessed by
the railroad company.   It was held that the assess-
ment of damages, which was in fact made nearly a
year after the building of the road, did not relate back,
so as to prevent plaintiff from recovering damages he
had sustained between the time of the building of the
road and the time the assessment was in fact made.

It will be observed that the *Wilson* case, in its
facts, is different from the case at bar.   In that case,
the action was brought within five years from the time

the road was built.   It was maintained upon the theory
that the original taking of the alley entitled plaintiff to
damages, which were not, and could not be, included
in the assessment as made, nearly a year afterward.
It did not involve the question as to whether the action
was barred by the statute of limitations.   The *Mer-
chant's Union Barb Wire Co.* case was an action to
recover damages for the construction of side tracks
that were laid under authority of the city council.   On
the final determination of the case, on rehearing (79
Iowa, 617, 44 N. W. Rep. 900), in speaking of the
claimed conflict between the *Cain* and other cases, on
the one hand, and *Pratt v. Railway Co.*, 72 Iowa, 249,
33 N. W. Rep. 666, on the other hand, it is said "that
this court has not at any time determined that
when a railroad track has been laid down in a
street, with the permission of the city council,
successive actions for damages may be maintained by
an owner of abutting lots."   The question of the
statute of limitations was not passed upon.   In the
*Harbach* case, it appeared that in 1883 the Des Moines,
Osceola & Southern Railroad Company, without pay-
ing the damages to the plaintiff's abutting property,
and without, so far as appears, having the consent of
the city so to do, laid its track on a street and alley
upon which plaintiff's property abutted; that, within
two years thereafter, suit was brought against that
company to recover damages for laying said tracks,
and plaintiff was adjudged to be the owner of the prop-
erty, and recovered a judgment for damages.   After-
ward, the Des Moines & Kansas City railway company
became the owner of the railroad; and in 1888 plain-
tiff brought suit against the latter company, asking
that it be enjoined from operating its road until it paid
said judgment.   It was held that the cause of action
did not arise until the new company took possession of
the property, in January, 1888.   That holding was

evidently based upon the ground that the original company and the defendant were trespassers, neither having any authority from the city to lay or maintain its tracks in the streets or alleys of the city. In *Pratt v. Railway Co.*, 72 Iowa, 249, 33 N. W. Rep. 666, and *Jolly v. Railway Co.*, 72 Iowa, 759, 33 N. W. Rep. 668, the question involved in the case at bar was considered. In the *Pratt* case it appeared that the road was constructed in pursuance of an ordinance of the city of Adel. Defendants also pleaded that it was so built with the consent of the owner of the real estate, and that more than five years had elapsed since the right of action accrued. It was there said that the extent of the recovery in such cases had not been expressly determined by this court; that "the only object of any condemnation proceedings that the defendants could have instituted would have been to ascertain the damages of the abutting owners, and, in such proceeding, permanent damages, or all damages the lot owner was then or thereafter entitled to, would be the measure of the recovery and of the defendants' liability. That is precisely the object of this action, and we think there is no well founded reason why the same measure of damages should not be the rule."

A careful examination of these cases shows that there is no real conflict between them, when the facts involved in each case are fully considered. From all of them, we may deduce the following rules: *First.* Where a railway is laid in a street, or alley, without the consent of the municipality, and without the consent of the abutting owner, and the damages to such owner are not assessed, he may maintain an action for such damages, and, in a proper case, may treat the injury as a continuing one, for which successive actions will lie, unless the structure is of such a character and the circumstances are such, as that the railway should be deemed permanent, and

hence the injuries original in character. *Second.* Whether a railway structure is to be deemed permanent, so as to permit and require in such cases a recovery which shall embrace all damages which accrue at the time of occupancy of the street or alley, as well as all that may thereafter arise, in one action, which must be brought within five years of the time of the beginning of said occupancy, depends upon the facts and circumstances appearing in the case. *Third.* In a case like that at bar, where the injury complained of is the construction and operation of the main line of a railroad, which is conceded by all parties to be permanent in its character, and which, it may well be presumed, will continue indefinitely and perpetually, and which can not be remedied except by the company's ceasing to do business over its main line, or removing the same to some other locality, the structure should be treated, in view of all the facts, as of a permanent character.

It follows, then, that treating the railway as permanent, as we do, and applying the rules of law applicable to such cases, the cause of action is not a continuing one, but arose when the occupancy of the alley first began by the Osceola Company. At that time, plaintiff could have brought his action, and recovered for all damages which he was then or might thereafter be entitled to. The nature and character of the injury to his property abutting on said alley occupied by his railway company then became fixed and certain. The occupancy furnished a safe and substantial basis from which to calculate future as well as present damages. In such a case, the law treats the injury as occurring at one time. In this case, we think it may properly be said that the injury is of such a character that it can not be remedied; that is, the only remedy would be to cease using the road, or to remove it elsewhere. We can not presume that either alterna-

tive will ever be resorted to. The character of the improvement, and its use, is such that it is unlike a switch track which has been laid for access to some warehouse in violation of an ordinance, and which it may well be presumed may be removed voluntarily, or under orders of the city, and that, too, without impairing the efficiency or principal value·of the railway as a whole. The city of Osceola, having given its consent to the occupancy of this alley, could not order the railway company to cease using it for the purpose for which it was granted. The cause of action having accrued more than five years prior to the commencement of this suit, the bar of the statute is complete, unless the running of the statute has been interrupted, —a matter hereafter discussed. *Hunt v. Railroad Co.,* 86 Iowa, 15, 52 N. W. Rep. 668, and cases cited.

III. From April, 1885, until January, 1888, this railway was controlled and operated by a receiver appointed by the federal court. Appellant insists that this fact operated to suspend the operation of the statute of limitations. He relies upon Code, section 2533, which reads: "The time during which a defendant is a nonresident of the state shall not be included in computing any of the periods of limitation above described."

The argument is that the creditors of the company which then controlled the road caused a receiver to be appointed; that these creditors were residents of other states; that the state courts ceased to have jurisdiction during the period of receivership, and, as stated by counsel, "a party is in law a nonresident of the state during the time that he is beyond the reach of the processes of the state courts." Now, the general rule is that, when the statute has once commenced to run, it will not be interrupted. Under the provisions of the section above set forth, the statute ceases to run during the time the party is a nonresident of the state. As we have seen, the cause of action accrued in

1882, when the Osceola Company entered upon and occupied the alley. The statute had been in operation about three years when the receiver was appointed. The Osceola Company was a resident of this state, and so continued during the entire period of limitation. The appointment of a receiver for its property did not make the corporation a nonresident of the state. The argument of counsel is based upon the thought that plaintiff could not sue the Osceola Company while its property was in the hands of a receiver, and hence the statute should cease to run. It may be conceded that the receiver could not be sued in the state courts without the authority of the federal court appointing him, and so, if the appointing court refused permission to the creditors to sue in the state courts, he would, for the time being, be without remedy in the state courts. Our law, however, does not provide for such a contingency. It does not appear in this case that plaintiff could not have, by leave of the federal court, prosecuted his suit in the state court. However that may be, it does not appear that either the Osceola Company or this defendant were ever nonresidents of Iowa. The statute, by the word "nonresident," contemplates one who has acquired a residence in another state. As it does not appear that either the Osceola Company or the defendant acquired a residence in any other state, so far as the pleadings show, they were not nonresidents, so as to interrupt the running of the statute.

Our conclusion renders it unnecessary to pass upon the motion to affirm. For the reasons given, the demurrer was properly overruled. AFFIRMED.