W. J. HUGHES, Appellee, v. THE CHICAGO, BURLINGTON AND QUINCY RAILWAY COMPANY ET AL., Appellants.

**Real property:** FLOODING SAME: PERMANENT AND TEMPORARY INJURY.
1  Although a railway bridge and embankment may be of a permanent character, the injury caused thereby from damming the water and flooding adjacent land is not necessarily of a permanent character, but may be temporary or intermittent.

**Same.** Where the structure was not upon plaintiff's land but over
2  a stream passing through the same, he was in no manner required to take notice of the method of its construction; nor could he anticipate injury by reason of its insufficient capacity, but his damage occurred whenever it obstructed the flow of the stream causing it to overflow his land, and was not permanent but temporary or continuing; and he might elect to so treat it, and the recovery of damages for one or more invasions was not a bar to an action for subsequent similar injuries.

**Same:** INSTRUCTION. Where there was evidence to support the
3  jury's finding that plaintiff's injury was due to the obstruction of the stream by defendant's bridge and embankment, there was no occasion to instruct the jury concerning the measure of plaintiff's recovery in case it should be found that the injury was caused in whole or in part by another insufficient waterway or obstruction.

*Appeal from Lucas District Court.*—HON. D. M. ANDERSON, Judge.

WEDNESDAY, FEBRUARY 17, 1909.

ACTION at law to recover damages. Judgment for plaintiff, and defendants appeal. The material facts are stated in the opinion.—*Affirmed.*

VOL. 141 IA.—18

*Stuart & Stuart,* for appellants.

*Mitchell & Hunter* and *John T. Clarkson,* for appellee.

WEAVER, J.—The plaintiff owns a farm of one hundred and sixty-five acres in Lucas County. A stream of water known as "Whitebreast creek," flowing from the southwest in a somewhat northeasterly direction, lies to the southward, and a considerable portion of the farm is bottom land adjacent to this water course. The railroad company's right of way follows substantially an east and west course along the valley or bottom lands, crossing the bends of the stream at more or less frequent intervals. The relative situation of the plaintiff's farm to this stream and to the right of way is indicated by the rough outline plat herein included:

MAPS.—Both parties used and introduced maps on the trial substantially the same as the following, which were shown to be approximately correct:

At a crossing of the creek to the southwest of plaintiff's land the company has constructed what is known in the record as the "West bridge," and again at a point slightly to the southeast of said premises what is known as the "East bridge." Between these bridges, for much of the distance, at least, the railway track is laid on a high and solid embankment, in which there is an opening for the public road, and another to allow the drainage from the south to pass under the track into a ditch running from the point marked "A" on the plat eastward to "B." As a cause of action the plaintiff alleges that defendant's east bridge, is negligently constructed and maintained, in that the opening for the passage of water thereunder is smaller and of less capacity than is afforded by the west bridge, with the result that in times of floods and freshets the waters passing under the west bridge, augmented by the additional drainage entering the stream between the bridges, is dammed or held back an unreasonable and unnecessary length of time. He further alleges that by reason of such negligence his lands were flooded during the years 1904, 1905 and 1906, destroying his crops and injuring said lands for which he demands compensation in damages. The original petition was drawn on the theory that the alleged injury to plaintiff's lands was of a permanent character, but by amendment the injury was alleged to be of a continuing or recurrent character and damages were asked accordingly.

The defendant denies the alleged negligence, and avers that said bridges were reconstructed about the year 1900, with an enlarged waterway under the same, using all reasonable care and skill to avoid obstructing the natural and proper flow of the stream, and that as so constructed said bridges and each of them do afford ample passageway for the prompt escape of all the waters flowing therein. The answer further alleges that the damage, if any, which plaintiff has sustained is chargeable to the

insufficient waterway afforded by the county bridge which spans the same stream between the two railway bridges. It further alleges that said railway bridges were not constructed by itself, but by a preceding owner of the railway, and if insufficient the injury therefrom was of a permanent character for which the party building it then became liable once for all, and the defendant as a purchaser of the road is in no manner liable therefor. For further answer it is alleged that in the year 1904 the plaintiff brought action against the defendant making substantially the same allegations of negligence as he now relies upon, and demanding damages for injuries to his farm for the years 1902, 1903 and 1904, and that on November 28, 1904, the parties made a full and final settlement by which the defendant paid the plaintiff the sum of $400 in full satisfaction of all his claims for damages, including those for which this suit is brought. On trial to a jury there was a verdict for plaintiff for $750, and from the judgment entered thereon defendant has appealed.

I. The first and principal contention of appellants' counsel is that if plaintiff's charge of negligence in the construction of the railway or bridge be true the injury resulting to him therefrom was of a permanent character, and having once presented a claim for damages which has been satisfied and discharged by the settlement of November 28, 1904, no further action can be maintained. The question thus presented is a frequently recurring one, and the precedents thereon are not entirely harmonious. In this state, however, the general features of the rule are fairly well settled, though owing to variations of fact conditions there may often be room for difference of opinion as to its proper application. So far as the distinction between original and continuing injuries is involved in claims for damages on account of the negligent construction of a railway, the case now before us is clearly gov-

1. REAL PROPERTY: flooding same: permanent and temporary injury.

erned by *Harvey v. R. R. Co.,* 129 Iowa, 465, where that subject was quite thoroughly considered, and, as we are still satisfied with the conclusions there announced, it is unnecessary to here repeat the discussion of authorities. We may say, however, that counsel for appellant makes the mistake of assuming that, because the structure in question, the railway embankment and bridges, may be considered of a permanent character, the injuries resulting to the plaintiff are therefore also original and permanent. But this does not follow. Referring to this very question in the *Harvey* case, we said that the term "permanent," as here used, "has reference not alone to the character of the structure or thing which produces the alleged injury but also to the character of the injury produced by it. In other words, the structure or thing producing the injury may be as permanent and enduring as the hand of man can make it; yet if the resulting injury be temporary or intermittent, depending on future conditions which may or may not arise, the damages are continuing, and successive actions will lie for successive injuries." The same proposition is affirmed in *Troy v. R. R. Co.,* 3 Foster (N. H.) 83 (55 Am. Dec. 177); *Railway Co. v. Biggs,* 52 Ark. 240 (12 S. W. 331, 6 L. R. A. 804) and note to same case in 20 Am. St. Rep. 176.

It is to be remembered that the railway in this case is not constructed upon the land of the plaintiff. In constructing it there was no trespass upon his premises. He was not required to stand guard over the work nor take notice of the plans or methods adopted by the company in performing it. He had the right to assume that the company would exercise the proper degree of care to avoid obstructing the flow of water to his injury. . If the waterway provided by the bridge was sufficient for ordinary stages of the stream as the evidence indicates it was, he sustained no injury in

2. SAME.

fact or in law until a period of high water arrived to test
its capacity.    Until the delayed floods had set back across
the intervening land and invaded his premises, he had no
legal right to complain—no cause of action.    Until then
there was no certainty that he would even suffer injury
from such cause.    The invasion of his premises was not
permanent but temporary, and each recurring invasion
was a new wrong for which a new action would lie.    If,
when subjected to the test of use, the bridge was found
to unduly obstruct the flow of flood waters, to plaintiff's
injury, he had the right to assume that the railway com-
pany would remedy the defect, or, failing so to do, would
make adequate compensation for such injuries, if any, as
might from time to time result therefrom to him.    What
would have been plaintiff's right in the premises had the
structure complained of been placed upon his own land
without his authority or consent, or had the railway em-
bankment or bridge operated from the first to set the
water back upon his land in the form of a permanent pond
or lake, we need not consider.    As it was, the railway
was outside the limits of his farm, no injury followed till
the floods came, and without some injury he could not
rightfully demand damages or maintain an action therefor.
Suppose, without waiting until his land had been actually
invaded and injured by high water, he had sued the rail-
way company because of anticipated or possible injuries
from such source, would counsel contend that the com-
pany's demurrer to such demand might not be sustained?
To uphold such a cause of action would be to say that a
farm owner, whose negligent neighbor erects an insuffi-
cient partition fence, need not wait until his crops have
been destroyed by trespassing cattle before bringing action
therefor, but may sue at once because of the loss which is
quite sure to come some time in the indefinite future if
the defects in the fence are not sooner remedied.    This
illustration would of course not be applicable to the case

at bar if, to use the language of Mr. Freeman (20 Am. St. Rep. 174), the construction of the bridge in question had at once upon its completion been "productive of all the damage which could ever result from it," for in such case the injurious act would have spent its force, and action would at once lie for original damages. It is an elementary proposition that negligence alone gives rise to no right of action; it is not until injury results from the negligent act or omission that damages may be recovered. It is true that where the cause of the injury is permanent, and the resultant injury is of an intermittent character, but likely to occur from time to time in the future, the party injured may elect to treat the injury as permanent, and recover all his damages in a single action. If he does so it is obvious that subsequent injuries from the same cause will give him no right to an additional recovery. If, however, he elects to treat the injury as of a temporary or continuing character, and sues for damages resulting to him from one or more specified invasions of his property, a recovery thereunder is no bar to an action for subsequent similar injuries. *Harvey v. R. R. Co.,* 129 Iowa, 476, and cases there cited. We find nothing in the facts of the present case to take it out of the rule to which this court has repeatedly given its adhesion, as indicated by the authorities cited, and we hold that the court did not err in refusing to hold that the injury of which plaintiff complains was of a permanent character, or in submitting the claim to the jury as one for continuing damages.

II.    The conclusion reached in the preceding paragraph necessarily disposes of the alleged settlement adversely to the claim asserted by appellant. It appears in evidence, without dispute, that the settlement referred to was made in November, 1904, and by its express terms related solely to the damages claimed by plaintiff for injuries to lands during the years 1902 and 1903, and the

voucher made out by the railway company for payment of the sum so agreed upon states it to be for damages "for the years 1902 and 1903." Indeed, we do not understand counsel to claim anything on account of this settlement, if this theory of the permanent character of the damages suffered by the plaintiff is not sustained by us, and upon that point we uphold the position taken by the trial court.

III. Error is assigned upon the alleged failure of the trial court to properly instruct the jury concerning the measure of plaintiff's recovery in case it should be

3. SAME: instruction.
found that the injury was caused in whole or in part by the alleged inadequate waterway afforded by the county bridge, or by hedge-rows or driftwood or other causes than the negligence of the defendant. On this point it is sufficient to say that the jury specially found and returned that the flooding of plaintiff's land was caused by the railway bridge and embankment, and not by any of the other suggested possible obstructions. There was evidence on which these findings could properly be based, and, in view of such finding, the jury had no occasion to consider what might have been the measure of amount of plaintiff's recovery under a state of facts which it found did not exist.

Other questions argued are all general, governed by the conclusion already announced. The judgment of the district court is *affirmed*.