FIRST TRUST JOINT STOCK LAND BANK OF CHICAGO, Appellee, v. E. M. DUROE, Receiver, Appellant, et al., Appellees.

No. 40854.

June 20, 1931.

E. M. Duroe, for appellant.

Ellis Stern and J. S. Whitney, for appellee.

WAGNER, J.—The intervener, Ebbeson, holds a second mortgage upon the real estate. He joined the plaintiff in asking for the same relief and therefore his rights will necessarily be determined by our decision upon the merits as between the plaintiff and the receiver.

For the determination of the proposition submitted, it will be necessary to quite fully state the facts, which we now proceed to do. On October 29th, 1924, Vickrey was the owner of 120 acres of land in Buena Vista County; on that date, he procured a loan from the plaintiff in the amount of $6000.00, and to secure the payment of the same executed a mortgage upon the 120 acres of real estate. The mortgage was filed, indexed and recorded in Buena Vista County on the 8th day of January, 1925. By the provisions of the mortgage Vickrey, the mortgagor, covenanted and agreed to keep the buildings thereon insured to the full insurable value in insurance companies acceptable to the mortgagee, "and assign and deliver to it all policies of insurance on said buildings, and the renewals thereof; and in case of failure to do so, the said party of the second part (the mortgagee) or assigns, may effect such insurance; and the amounts paid therefor, with interest thereon from date of

payment, at the rate of eight per cent per annum, shall be collectible with, as part of, and in the same manner as, the principal sum hereby secured." On December 29th, 1924, Vickrey was indebted to the intervener-Ebbeson in the amount of $2000.00 and in order to secure the amount of said indebtedness he and his wife executed unto the intervener a mortgage upon the real estate. This mortgage contained a provision relative to insurance similar to the one contained in plaintiff's mortgage. Intervener's mortgage was duly filed, indexed and recorded in Buena Vista County on the 10th day of March, 1925. On March 1st, 1925, Vickrey made application to the Farmers Mutual Fire & Lightning Insurance Association of Buena Vista County for insurance upon the buildings situated on said real estate for the term of five years from and after the date of application. The application was accepted and Vickrey thereby became a member of said Mutual Insurance Company. The policy issued insured the barn in question in the sum of $1000.00. By the terms of the application, he agreed to make punctual payments of all dues and assessments for which he might become liable and to conform in all respects to the by-laws, rules and regulations of the association under penalty of forfeiture of the policy. No mortgage clause was attached to the policy. The company had no notice that the plaintiff and intervener were mortgagees and that they were claiming to be entitled to the insurance money until after the fire hereinafter mentioned. Vickrey failed to pay an assessment due the insurance company and by reason of that fact, in accordance with the by-laws of said company his rights as a member were forfeited and terminated on March 1st, 1926; so that after said date and until the time hereinafter mentioned, there was no enforceable insurance upon the buildings situated upon the real estate. F. H. Helsell and H. L. Farmer had been conducting a bank at Sioux Rapids, familiarly known as the Bank of Sioux Rapids, and in so far as this controversy is concerned, the interests of Farmer and Helsell and said bank are identical. In June, 1926, the bank and Vickrey made an exchange of real estate and Vickrey and his wife executed unto Helsell and Farmer a warranty deed for "all our equity in and to" (the 120 acres in question) "Said land being encumbered for a first mortgage of Six thousand dollars and a second mortgage of Two thousand dollars, and a

lease expiring March 1, 1927.'' Vickrey assigned the insurance policy to Helsell and Farmer and when the latter presented the same to the company for their consent and approval they were informed that the policy was not in force, because of lack of payment of an assessment by Vickrey; that in order to accomplish the transfer of the policy, it would be necessary for the delinquent assessment to be paid. And thereupon, or a few days later, the amount of said delinquent assessment was paid by Helsell and Farmer and the consent and approval to the assignment obtained from the company. In this manner, Helsell and Farmer became members of the Mutual Insurance Company. It will thus be observed that there was no mortgage clause attached to the Insurance Policy and that there was no insurance in favor of Vickrey after March 1st, 1926. The result of the transaction between Helsell and Farmer on the one hand and the insurance company upon the other was the same as if Helsell and Farmer or the bank had made application to, and procured a new policy from the company. The bank, or those representing it, paid all subsequent assessments made upon it and thereby kept the insurance in force. The bank went into the hands of a receiver in November, 1926, and the rights of Duroe as receiver are identical with those of Helsell and Farmer and the bank. There was no assumption of, or agreement by Helsell and Farmer or the bank to pay, the prior mortgage indebtedness. The record discloses that the bank procured this insurance solely for the purpose of protecting its interest as the owner of the equity in the real estate. It is not shown that the indebtedness secured by the mortgages is due and there is no showing as to the value of the real estate covered by the mortgages. The barn was burned in 1929 and the company made no denial that it owed the sum of $1000 to some one, and it issued its check in the sum of $1000, which is held by the defendant-Whitney to be paid to whomsoever the court may determine is entitled thereto. The trial court held that the plaintiff has an equitable lien upon said fund of $1000.00 and rendered judgment ordering that the same be paid to the plaintiff, as the holder of the first mortgage. From this action by the trial court, the defendant-receiver has appealed.

The question for our determination is: Who, as between the plaintiff-mortgagee and the defendant-receiver, is entitled

to the $1000.00? It is well settled, that, when the mortgagor is bound by the terms of the mortgage to keep the premises insured for the security of the mortgagee, as between the mortgagee and the mortgagor an equitable lien arises in favor of the mortgagee for the money received upon the policy to the extent of the mortgage indebtedness, regardless of whether or not the policy is in express terms payable to the mortgagee, or whether or not it contains a mortgage clause making the same payable to the mortgagee, as his interest may appear. See Johnson v. Northern Minnesota Land & Investment Company, 168 Iowa, 340; Dunlop v. Avery, 89 N. Y. 592. However, in the instant case, we are not dealing with the rights as between Vickrey, the mortgagor, and the plaintiff-mortgagee. The question for our determination is the right as between the mortgagee and the grantee of the mortgagor, which grantee did not assume and agree to pay the mortgage debt, and procured the insurance solely for the purpose of protecting its interest as the owner of the equity in the farm. While it is true, that the mortgagor assigned to his grantee the policy which he had in his possession, yet, the grantee obtained nothing by reason of said assignment as the policy had lapsed, had been terminated and cancelled and was of no force or effect. As hereinbefore stated, as the result of the transaction among the mortgagor, Helsell and Farmer and the Insurance Company, Helsell and Farmer became members of said Mutual Insurance Company the same as if they had made application to, and procured a new policy from the company. Since the mortgagor, at that time, had no insurance there was none to inure to the benefit of the mortgagee. The grantee of the mortgagor, not having assumed and agreed to pay the mortgage debt, was under no duty or obligation to keep the premises insured for the benefit of the mortgagee, unless it be that the covenant in the mortgage by which the mortgagor agreed to keep the buildings insured is a covenant running with the land. It is the claim of counsel in argument that this court has not as yet determined this proposition, and in so far as our investigation discloses, we have not directly passed upon the question. In Ayres v. The Hartford Fire Insurance Company, 17 Iowa 176, perhaps, by way of dictum, the court there declared that the contract of insurance does not run with the land. The general holding of courts of other jurisdictions is,

that a covenant by the mortgagor to keep the buildings upon the mortgaged premises insured is entirely personal in its character and does not run with the land. See Spillane v. Yarmalowicz, (Mass.) 147 N. E. 571, 38 A. L. R. 1401; Dunlop v. Avery, 89 N. Y. 592; Reid v. McCrum, 91 N. Y. 412; Kaplan v. Wilderman, (N. J.) 123 Atl. 165; Shadgett v. Phillips & Crew, (Ala.) 31 So. 20; Farmers' Loan and Trust Co. v. Penn Glass Company, (U. S.) 46 L. Ed. 1234. This proposition is very ably discussed in a note found in 38 A. L. R. 1401. In Kaplan v. Wilderman, (N. J.) 123 Atl. 165, the court made the following pronouncement:

''Complainants seek to have an equitable lien impressed upon the insurance moneys to the extent of the amount due for principal and interest on their mortgage. This contention is based on three grounds (including the following): First, upon a covenant made by the original mortgagor Remler in his mortgage to complainants, to insure and keep insured the buildings, and assign the policy to complainants as collateral security for the mortgage indebtedness. This, however, cannot avail complainants as against Wilderman, for the agreement does not purport to bind any one but Remler himself (not his heirs or assigns), and such covenant or agreement to insure is only a personal covenant, not a covenant running with the lands. Farmers' Loan & Trust Co. v. Penn Plate Glass Co., 186 U. S. 434, at page 453, 22 Sup. Ct. 842, 46 L. Ed. 1234. Compare, also, National Bank v. Segur, 39 N. J. Law, 173, at page 184 et seq.; Pipe Line Co. v. D., L. & W. R. Co., 62 N. J. Law, 254, at page 274, 41 Atl. 759, 42 L. R. A. 572; Bordentown v. Anderson, 81 N. J. Law, 436, 79 Atl. 281. Secondly, it is argued that, upon some theory of implied contract, Wilderman became substituted as the covenantor in the mortgage by reason of his taking a deed for the property subject to the mortgage. This, also, is without foundation, for Wilderman, by the conveyance to himself, merely took title to the premises subject to the incumbrance. There is no clause in his deed whereby he assumes payment of the mortgage, much less assumes performance of the covenant to insure. Under the law in this state no agreement to pay a mortgage is implied from acceptance of a deed to property subject to the mortgage. The grantee is under no obligation to pay unless there be an express agreement so to do in his deed. Tichenor

v. Dodd, 4 N. J. Eq. 454; Loudenslager v. Woodbury Heights Land Co., 64 N. J. Law, 405, 45 Atl. 784. So much the more as to the raising of an implied obligation to insure and assign the policy."

Similar quotations could be made from the other authorities cited but we deem it unnecessary. We therefore hold, in accordance with the great weight of authority, that such a covenant does not run with the land; and that, from no view point was the grantee of the mortgagor under any duty or obligation to the mortgagee to keep the buildings insured for his benefit.

The appellee, relying upon Wheeler v. Factors' and Traders' Insurance Company, (U. S.) 25 L. Ed. 1055, contends that the provision in the mortgage giving the mortgagee the right to effect or procure the insurance, in the event of the mortgagor's failure to do so, does not prevent the mortgagee from having an equitable lien upon the insurance fund, but this relates only as to the rights as between the mortgagor and the mortgagee and has no bearing upon the determination of the rights as between the mortgagee and the grantee of the mortgagor when the grantee is under no duty to the mortgagee to obtain the insurance for his benefit.

In Ryan v. Adamson, 57 Iowa 30, Ketcham executed a mortgage upon a town lot to secure the plaintiff. Ketcham subsequently sold the property to Adamson, who agreed to pay the plaintiff the amount due on the mortgage. Thus, Adamson stepped into Ketcham's shoes and plaintiff could have brought suit and recovered against either or both Ketcham and Adamson the amount of the mortgage debt. After Adamson purchased the property, he caused the house thereon to be insured. After the destruction of the building by fire, plaintiff sought to recover the insurance money. In passing upon the merits, the court declared:

"There are no facts alleged upon which equity will support plaintiff's claim to be subrogated to the rights of the assured. We know of no rule of law or equity under which plaintiff is entitled to the relief prayed for in the petition. This case cannot be excepted from the rule that a mortgagee has no interest in a policy of insurance issued to the mortgagor for his own benefit."

The reasoning of the cited case is applicable to the facts in the instant case, for the grantee of the mortgagor, under no duty or obligation to pay the mortgage debt, procured the insurance solely for the purpose of protecting its interest as the owner of the equity in the real estate.

The appellee relies upon In re Hackbart, 203 Iowa 763, and Brady v. Welsh, 200 Iowa 44. Said cases are clearly distinguishable from the instant case. In the Brady case, the question involved was as to the right to the insurance money as between the vendor and vendee in an executory contract of sale in which the vendee became the owner of the equitable title to the real estate and the vendor retained only the legal title as security for the unpaid purchase price. The vendee had fully paid the vendor the contract price for the real estate and it was quite properly held that under the facts of that case, as between the vendor and the vendee, the vendee was equitably entitled to the insurance money. Likewise, in the Hackbart case, it was held that Hackbart was an involuntary purchaser of the real estate and we quite properly applied the same reasoning as in the Brady case, and held that he was entitled to the insurance money.

In the instant case, when Helsell and Farmer purchased this insurance for the sole purpose of protecting their or the bank's interest as the owner of the equity in the real estate, the mortgagee had no insurance, which he himself could have obtained and collected the cost thereof as a part of the mortgage debt, nor as hereinbefore shown, did the mortgagor at that time have any insurance which would inure to the benefit of the mortgagee. It is true, that the plaintiff had a lien upon the real estate, including the barn thereon situated, but there is no showing that the mortgage is due, no showing that the farm without the barn is inadequate security for the mortgage debt, no showing that those executing the notes secured by the mortgage are insolvent, no showing of necessity to resort to this fund for the payment of the mortgage indebtedness; and the mortgagee failed to take sufficient interest in the matter to protect himself by procuring insurance which he could easily have done without cost to himself. Equity aids the vigilant, not those who slumber on, or fail to protect their rights. The parties to the policy, or contract of insurance, were the insurance company and the bank.

Under said contract, the insurance company agreed to pay the bank, in the event of loss. Under the policy, the bank and not the mortgagee is legally entitled to the money. Under the record of this case, the plaintiff has failed to show any equity existing in his favor to entitle him to be subrogated to the contractual legal rights existing in favor of the bank against the insurance company; and this being true, the money should be paid to the bank or the receiver thereof, who is legally entitled to the same. See Dunlop v. Avery, 89 N. Y. 592.

The judgment of the trial court is erroneous and the same is hereby reversed.—Reversed.

STEVENS, DE GRAFF, ALBERT, KINDIG, and GRIMM, JJ., concur.

FAVILLE, C. J., takes no part.