ROSE THOMAS, Appellant, v. CEDAR FALLS et al., Appellees.

No. 43194.

MARCH 9, 1937.

Kildee & Kildee and Pike, Sias, Zimmerman & Butler, for appellant.

R. F. Merner, Burr C. Towne, County Attorney, and E. H. McCoy, for appellees.

Kintzinger, J.—Plaintiff is and has been a resident of Cedar Falls, Black Hawk County, Iowa, for over ninety-two years. She is the owner of four town lots in Cedar City, a small suburb adjoining the northeast section of Cedar Falls. These lots are situated upon low-lying ground a short distance from a bayou or offshoot of the Cedar River, and adjacent to but not abutting the main highway or state road running in a general northerly or northeasterly direction parallel to the course of the bayou adjoining the westerly side of Cedar City. This state high-way is and was a much traveled road ever since 1859 extending between Cedar Falls, Cedar City, and Janesville, Iowa.

Appellant alleges that at a point at or near the corporation line between Cedar Falls and Cedar City, this highway crosses a natural watercourse from the southeast connecting with the bayou hereinabove referred to; that in 1867 the defendants constructed a bridge upon this highway across said alleged watercourse leaving an opening under the bridge for the natural flow of water between the watercourse and the bayou. The elevation of the highway was much higher than the natural surface of the surrounding ground.

In 1875 the board of supervisors, after a careful investigation, decided that the bridge was no longer necessary, and the highway at the bridge was completely filled to the surface of the roadway, creating an embankment over and across the alleged watercourse. Plaintiff contends that the construction of this embankment interfered with the natural flow of water between the bayou and the watercourse, and that at times of high water or floods, the water in the bayou was held back until it overflowed the bank with such force as to damage plaintiff's adjoining property, creating a nuisance. Plaintiff, therefore, asks for its abatement, and that the defendants be compelled to provide a sufficient opening through the embankment to permit the free

and natural flow of water between the bayou and the alleged watercourse.

The testimony shows that this embankment was washed out and refilled in 1912, in 1917, and again in 1929, and again in 1933. The effect of these washouts resulted in deep erosions and gulleys in plaintiff's property.

Defendants contend that there was no natural watercourse at the place where the bridge was built prior to its construction, but that the land in that vicinity was very low and swampy, and that the bridge was built for the purpose of avoiding low places in the road. The testimony as to the existence of a watercourse at the place in question was conflicting.

As a defense to plaintiff's cause of action, defendants allege, inter alia, that plaintiff's cause of action is barred by the statute of limitations, and that she has acquiesced in defendants' action in maintaining the embankment so long that she has slept on her rights, and is now barred by her own laches in prosecuting this action. The court entered a decree in favor of defendants, and plaintiff appeals.

I.   Appellees contended that even though a watercourse did exist at the point in question, the embankment created by the fill at the bridge, and the raising of the highway at and along that point, constituted a permanent obstruction, and that any injury to plaintiff's property resulting therefrom was an original injury, for which the statute of limitations began to run at the time of the completion of the obstruction, or at least from the time when any injuries were first actually inflicted upon plaintiff's property.

The bridge was filled in, and the embankment constructed in 1875, and was maintained in substantially the same condition ever since. The embankment was solid, had no openings therein for the passage of water between the bayou and the watercourse, and prevented the free flow of water from the bayou to the alleged watercourse on the east side thereof. Plaintiff's property was not abutting the embankment, but was five or six hundred feet away.

Plaintiff concedes that "the law in this state is well settled that if the structure is permanent and the injury is permanent, then the injury is original and the statute runs from the time the structure is built. However, if the injury is not permanent, then successive actions lie."

The plaintiff contends, however, that even though the construction of the embankment was permanent, the injury was not original, but continuing, and that each new injury constitutes a new cause of action; and that because this action was brought within five years of the last injury, it is not barred by the statute of limitations. In support of her contention, plaintiff cites the following and other cases: Harvey v. Railroad Co., 129 Iowa 465, 105 N. W. 958, 3 L. R. A. (N. S.) 973, 113 Am. St. Rep. 483; Hughes v. Railroad Co., 141 Iowa 273, 119 N. W. 924, 133 Am. St. Rep. 164; City of Ottumwa v. Nicholson, 161 Iowa 473, 143 N. W. 439, L. R. A. 1916E, 983.

In Harvey v. Railroad Co., 129 Iowa 465, loc. cit. 473, 105 N. W. 958, 961, 962, 3 L. R. A. (N. S.) 973, 113 Am. St. Rep. 483, this court recognizes a confusion in the authorities as to when an injury resulting from a permanent structure is original, and said:

"The confusion * * * found in the precedents has arisen not so much ·from the statement of governing principles as from the inherent difficulty in clearly distinguishing injuries which are original and permanent from those which are continuing, and in assigning each particular case to its appropriate class.

"In Powers v. Council Bluffs, 45 Iowa 652, 24 Am. Rep. 792, this court cited with approval the definition of permanent injury given in Troy v. Railroad Co., 3 Fost. [23 N. H.] 83, 55 Am. Dec. 177: 'Wherever the nuisance is of such character that its continuance is necessarily an injury, and where it is of a permanent character that will continue without change from any cause except human labor, there the damage is an original damage, and may be at once fully compensated.' This definition we still think correct, but a failure to carefully construe and apply it has led to some apparent inconsistencies in this and some other courts. It will be observed from a reading of the quoted paragraph that the term 'permanent,' so often made use of in connection with the right to recover original damages, has reference not alone to the character of the structure * * * which produces the * * * injury, but also to the character of the injury produced by it. In other words, the structure or thing producing the injury may be as permanent and enduring as the hand of man can make it, yet if the resulting injury be temporary or intermittent, depending on future conditions which

may or may not arise, the damages are continuing, and successive actions will lie for successive injuries.''

In that case, however, we also said, loc. cit. 475:

''As applied to obstructions of water and drainage ways by railway embankments, some courts have drawn a distinction, not generally recognized, between those [embankments] which are constructed solidly, without culvert, trestle, or other opening for the escape of water, and those in which an opening is provided, but proves to be insufficient for the purpose. *According to these precedents, the first condition above mentioned presents a case for original damages,* and the latter a case for continuing damages. Such seems to have been the thought controlling the decision in Haisch v. Railroad Co., 71 Iowa 606, 33 N. W. 126, and Stodghill v. Railroad Co., 53 Iowa 341, 5 N. W. 495.

''Applying the test suggested by the foregoing discussion, we are disposed to hold that damages arising from the occasional flooding of land *by reason of an insufficient culvert upon the* land of an adjacent proprietor are not original * * *. In this conclusion we are supported by the great preponderance of the authorities. [Citing cases.]'' (Italics ours.)

In Hughes v. Railroad Co., 141 Iowa 273, loc. cit. 278, 119 N. W. 924, 926, 133 Am. St. Rep. 164, this court said:

''This illustration would of course not be applicable to the case at bar if, to use the language of Mr. Freeman (20 Am. St. Rep. 174), the construction of the bridge in question had at once upon its completion been 'productive of all the damage which could ever result from it,' for in such case the injurious act would have spent its force, and action would at once lie for original damages.''

In City v. Nicholson, 161 Iowa 473, loc. cit. 479, 143 N. W. 439, 442, L. R. A. 1916E, 983, this court said:

''The measure of damage for injury to real estate, whether the suit be for what is called original damages or continuing damages, * * * is the difference between the value of the property immediately before the condition was created which caused the injury and the value immediately after.''

Appellees contend that the embankment created by the fill

under the bridge on the highway was a permanent construction, and that any injury sustained by appellant as a result thereof occurred more than five years before the commencement of this action, and is, therefore, barred by the statute of limitations. The embankment in question was permanent in character, and the injuries resulting therefrom, if any, occurred almost immediately thereafter.

The evidence shows that it was the intention of all parties to create a permanent obstruction to the flow of water between the bayou and the alleged watercourse; that plaintiff's property consisted of four town lots worth about $300, situated southeast of the embankment, but not abutting thereon. Although some injury was done almost immediately after the construction of the embankment, the first serious damage done to plaintiff's property occurred in the year 1912.

It is our finding from the evidence in this case that the construction of the embankment acted as a flood control, for lack of which plaintiff's property might have been greatly injured long prior to 1912. The flow of water through the former opening from the bayou, which was an offshoot of the Cedar River, would have created a new channel for the river. Many improvements at Cedar Falls were built at a great expense to property owners southeast of the embankment; highway No. 20 had been constructed at an expense of thousands of dollars; a bathing beach and picnic grounds were also constructed below this dam. Much of said property, including highway No. 20, would have been seriously damaged by a change in the course of the Cedar River.

It is also our conclusion from the evidence that while plaintiff's property was injured soon after the construction of the embankment, that any injuries resulting therefrom were original and caused by the permanent construction of the highway as an embankment along the east side of the bayou.

Appellees, therefore, contend that as the embankment was a permanent structure, and as any injuries to plaintiff's property resulting therefrom were original and occurred more than five years prior to the commencement of this action, the damages resulting therefrom are barred by the statute of limitations. Powers v. Council Bluffs, 45 Iowa 652, 24 Am. Rep. 792; Stodghill v. Railroad Co., 53 Iowa 341, 5 N. W. 495; Bizer v. Power Co., 70 Iowa 145, 30 N. W. 172; Haisch v. Railway Co., 71 Iowa

606, 33 N. W. 126; Peden v. Railway Co., 73 Iowa 328, 35 N. W. 424, 5 Am. St. Rep. 680; Fowler v. Railway Co., 91 Iowa 533, 60 N. W. 116; Brown v. Armstrong, 127 Iowa 175, 176, 102 N. W. 1047; Trumbo v. Pratt, 148 Iowa 195, 126 N. W. 1122; Irvine v. City of Oelwein, 170 Iowa 653, 150 N. W. 674, L. R. A. 1916E, 990; Shortell v. Elec. Co., 186 Iowa 469, 172 N. W. 649.

In Powers v. Council Bluffs, 45 Iowa 652, loc. cit. 655, 24 Am. Rep. 792, this court quoted with approval from Troy v. Railroad Co., 23 N. H. (3 Fost.) 83, 55 Am. Dec. 177, the following language:

"Wherever the nuisance is of such character that its continuance is necessarily an injury, and where it is of a permanent character that will continue without change from any cause but human labor, there the damage is * * * original * * *."

In Bizer v. Power Co., 70 Iowa 145, loc. cit. 147, 30 N. W. 172, 173, this court said:

"Where an injury is permanent, it is such as is spoken of in the books as original,—that is, as accruing wholly when the wrongful acts were done; and is distinguished from an injury * * * regarded as continuing, * * *. Where the injury is permanent, but one action can be maintained, and the recovery allowed is for all damages, past and prospective."

In Fowler v. Railroad Co., 91 Iowa 533, loc. cit. 540, 60 N. W. 116, 118, this court said:

"Where a railway is laid in a street, or alley, without the consent of the municipality, and without the consent of the abutting owner, and the damages to such owner are not assessed, he may maintain an action for such damages, and, in a proper case, may treat the injury as a continuing one, * * * *unless the structure is of such a character and the circumstances are such, as that the railway should be deemed permanent, and hence the injuries original in character.* * * * In a case like that at bar, where the injury complained of *is the construction and operation of the main line of a railroad,* * * * the structure should be treated * * * as of a permanent character." (Italics ours.)

In Trumbo v. Pratt, 148 Iowa 195, loc. cit. 197, 126 N. W. 1122, 1123, this court said:

"The weight of the evidence also shows that the water gate is in substantially the same condition, that it has been in for the past twenty-five years, and, for that reason alone, the plaintiffs are estopped from now complaining thereof. Brown v. Armstrong, 127 Iowa [175] 178, 102 N. W. 1047; Matteson v. Tucker, 131 Iowa 511, 107 N. W. 600."

In Irvine v. City, 170 Iowa 653, loc. cit. 662, 150 N. W. 674, 677, L. R. A. 1916E, 990, this court said:

"The general rule is that, where the nuisance is permanent, and the damages are to the land itself, and all parties intend that the nuisance shall be permanent, *the cause of action arises when the* land is first flooded, and the recovery must be for the full amount of damages done the property, measured by the difference between the value of the land before and immediately after the dam was constructed and the flooding done. In such cases, *the statute of limitations begins to run on the date of the first flooding and successive actions cannot be brought.* (Citing cases.) In such cases, the damages are done to the then owner of the land, and his cause of action is not transferred to a grantee by warranty deed. Such is the express holding in Peden v. Railroad [73 Iowa 328, 35 N. W. 424, 5 Am. St. Rep. 680], a case which has never been challenged or repudiated since its announcement. * * * (Italics ours.)

"As a general rule, if a nuisance is permanent in character, is intended to remain in the condition in which it was erected until destroyed by the elements, and the damages are to the land itself, especially where the erection is for a public or semi-public purpose, the damage is treated as original, to be recovered in one action, and not continuous in character. (Citing cases.)"

There is an apparent inconsistency in the decisions of this court upon this question. We think, however, that the rules have been fairly well stated in the cases hereinabove cited, and especially in Harvey v. Railroad Co., 129 Iowa 465, 105 N. W. 958, 3 L. R. A. (N. S.) 973, 113 Am. St. Rep. 483, where the inconsistencies have been referred to.

■■■ While the decisions may appear to be inconsistent, such apparent inconsistency arises in the application of the facts in each particular case. They all recognize the rule to be that where the obstruction to the free flow of the water is caused by perma-

nent embankment, and where the injuries resulting therefrom are apparent at the time of the construction of such permanent embankment or obstruction, then the injuries are original, although they do not occur immediately.

In some of these cases, the embankment did not constitute a complete obstruction to the flow of water without providing some means for the escape of the water, but culverts placed therein for that purpose were found insufficient to carry the water in its usual course. But in those cases where the embankment was completely filled without providing any means for the escape of water, and where such obstruction was permanent and meant to be permanent by all parties, the injuries are considered original, especially where the result of the obstruction was such that damages could reasonably be expected to result therefrom, and an action will lie at once or as soon as any injuries are actually inflicted upon the property.

In this case it was at once apparent that the obstruction of the watercourse would result in a rise of the water in the bayou west of the embankment. It was also apparent that in case of ordinary floods the water in the bayou west of the embankment would rise to such an extent that it might overflow the embankment and be precipitated in large quantities on plaintiff's lots.

The record also shows that the embankment used as the highway was kept intact and that every time part of it washed out, it was refilled with material designed to make it still more permanent. The record also shows that part of plaintiff's lots were flooded almost annually and some damage resulted therefrom. It is fair to say from the record that such a condition was reasonably to be expected at the time of the completion of the embankment.

It is our conclusion from the evidence offered in this case, without setting the same out in further detail, that the embankment in question was constructed as, for, and with the intent of creating a permanent obstruction, and as such it necessarily follows that the injury was permanent and began with the completion of the embankment, or at least from the time the first actual injury was inflicted on plaintiff's property.

Under such conditions and under the rules announced in the cases referred to, we are constrained to hold that the injuries were original and an action therefor should have been com-

menced within five years after the completion of the dam or at least within five years after the first injury to the property.

That the embankment was intended as a permanent obstruction is corroborated by the fact that although minor injuries were sustained soon after the construction of the embankment, no substantial damage resulted to plaintiff's property between the time of its construction in 1875 until 1912, and more than a generation thereafter. Other floods occurred thereafter, and the last in 1933.

As some cases hold that the statute begins to run with the original construction of a permanent dam or embankment, and others that the statute does not begin to run until after injury is sustained to the plaintiff's property, it is unnecessary for us to determine in this case whether or not the statute began to run from 1875 or from the time the first substantial injury was suffered in 1912. In either event more than five years have elapsed since the actual injury was sustained in 1912.

We are, therefore, constrained to hold that any action brought to compel the removal of said obstruction should have been commenced within five years after plaintiff sustained any actual injury therefrom. As more than that period of time elapsed prior to the commencement of this action, the statute of limitations has run, and plaintiff is barred thereby.

■■■ II. Neither plaintiff nor her grantors ever made any objection or protest of any kind against the construction of the embankment in question; they never complained of any injury therefrom prior to the commencement of this action, but quietly acquiesced in the action of the defendants ever since 1875. Appellees, therefore, contend that plaintiff has slept on her rights so long and was guilty of such laches, that she cannot now, after the expiration of nearly sixty years, commence an action to compel the removal of the obstruction complained of.

Plaintiff was a resident of Cedar City in 1867, when the bridge in question was first built. She lived in the vicinity of the road in which the embankment was constructed in 1875 until approximately 1923, and since that time has lived in the adjoining city of Cedar Falls, and witnessed the flooding of her premises during all that time without ever making any complaint.

"It is a familiar doctrine that, apart from any question of statutory limitation, courts of equity will discourage laches and

delay in the enforcement of rights. The general principle is that nothing can call forth the court of chancery into activity but conscience, good faith, and reasonable diligence. Where these are wanting, the court is passive and does nothing. The doctrine is founded principally on the equity maxims, 'he who seeks equity must do equity,' 'he who comes into equity must come with clean hands,' and 'the laws serve the vigilant, and not those who sleep over their rights.' " 10 R. C. L. 395.

The plaintiff and her grantors have slept on their rights for a period of over sixty years before commencing an action thereon. In the meantime rights of the defendants and other parties have intervened. The highway in question and also highway No. 20 have been greatly improved by the citizens of Cedar Falls, the County and the State Highway Commission, at a large expense, and many other citizens of that community and Cedar Falls have made large expenditures in improving their property.

The plaintiff has slept upon her rights too many years to enable her now to ask a court of equity to disturb the rights of the defendants and others which have grown up during the long period of time since the construction of the embankment in question. If there ever was a case in which the doctrine of laches and equitable estoppel exists, it seems to us it applies in the case at bar. Equity aids the vigilant, and not those who sleep on their rights. This rule is supported by the following authorities: 10 R. C. L. 395, 396; 32 Corpus Juris, 193; 46 Corpus Juris, 774–777; Bacon v. Chase, 83 Iowa 521, 50 N. W. 23; Blackman v. Wright, 96 Iowa 541, 65 N. W. 843; Loesche v. Goerdt, 123 Iowa 55, 98 N. W. 571; Keller v. Harrison, 151 Iowa 320, 128 N. W. 851, 131 N. W. 53, Ann. Cas. 1913A, 300; First Trust Joint Stock Land Bank v. Duroe, 212 Iowa 795, 237 N. W. 319; Clifton, etc. Co. v. Dye, 87 Ala. 468, 6 So. 192; Pana v. Coal Co., 260 Ill. 111, 102 N. E. 992, 48 L. R. A. (N. S.) 244; Sheldon v. Rockwell, 9 Wis. 166, 76 Am. Dec. 265.

In Sheldon v. Rockwell, 9 Wis. 166, 76 Am. Dec. 265, that court said:

"In the meantime, the dam was four times destroyed by floods, and as often rebuilt by the defendants. During all the time, the plaintiff resided in the immediate neighborhood, * * * With the exception of a verbal notice * * * at the time the dam was originally built; that its erection would be an infringement

of his rights; he remained * * * a calm and constant observer of * * * every movement made by the defendants, without one word of complaint or warning. * * * After nineteen years of profound sleep, he seems suddenly to have awakened to a sense of his position, and finding the dam, for a fifth time swept away by high water, and the defendants engaged in replacing it, the same as before, he asks of a court of equity that they be restrained. Could a more preposterous proposition be urged? A statement of these facts constitutes the strongest refutation of his claim for relief.''

So in the case at bar we can well say that this court will lend its aid only to the vigilant, active and faithful. After plaintiff's long and unparalleled negligence and acquiescence in the construction and maintenance of the embankment in question, she can have no standing in court for the purpose of asking the relief sought. During a period of more than a half century plaintiff and her grantors have slept upon their rights and have acquiesced in the action of the defendants. We are constrained to hold that she has been guilty of such laches as will estop her from claiming the relief sought.

Other reasons are urged by defendants for an affirmance of the decree of the lower court. In view of the conclusion hereinabove reached, we deem a consideration thereof unnecessary.

For the reasons hereinabove expressed, the decree of the lower court is hereby affirmed.—Affirmed.

RICHARDS, C. J., and ANDERSON, PARSONS, and DONEGAN, JJ., concur.

SAGER, J., concurs in result.